United States Court of Appeals,

Eleventh Circuit.

No. 95-3280.

Edward A. HOLIFIELD, Plaintiff-Appellant,

v.

Janet RENO, Attorney General of the United States, Joseph Class, Warden of FCI Marianna, Garland Jeffers, Associate Warden, FCI Marianna, Defendants-Appellees.

July 2, 1997.

Appeal from the United States District Court for the Northern District of Florida. (NO. 94-50357-RV), Roger Vinson, Judge.

Before BLACK, Circuit Judge, and FAY and ALARCON[*], Senior Circuit Judges.

PER CURIAM:

We affirm the judgment of the district court for the reasons stated in its dispositive order

dated September 11, 1995, attached hereto as an Appendix.

AFFIRMED.

ATTACHMENT

APPENDIX

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF FLORIDA, PANAMA CITY DIVISION.

Edward W. HOLIFIELD, Plaintiff,

v.

Janet RENO, Attorney General of the United States, Defendant.

No. 94-50357-RV.

***ORDER***

Pending is the defendant's motion for summary judgment. (doc. 8)

I. ***BACKGROUND***

This is a petition for review of a decision by the Merit Systems Protection Board ("MSPB"),

[*]Honorable Arthur L. Alarcon, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

brought pursuant to Title 5, United States Code, Section 7703, and Title VII of the Civil Rights Act of 1964 [42 U.S.C. §§ 2000e, et seq.]. The plaintiff, Dr. Edward W. Holifield, is proceeding *pro se*. Dr. Holifield, who is black, alleges that the Bureau of Prisons discriminated against him on the basis of his race when it removed him from his position as a physician at Federal Correctional Institution Marianna, Florida ("FCI Marianna"). Dr. Holifield also alleges that racial discrimination formed the basis for his reassignment from Chief of Health Programs to staff physician at FCI Marianna. Except as noted, the following material facts are not in dispute.

Holifield was appointed Chief of Health Programs ("CHP") at FCI Marianna on July 28, 1991.[1] The position was open because a Quality Assurance Physician Peer Review performed in November 1990 at the request of Warden Joseph Class revealed widespread problems within the medical department, and the incumbent CHP, Dr. Hosain, was relieved of his duties. *Walter Hollingsworth, Health Services Administrator, brought Holifield's name to the attention of Warden Class.* (doc. 8, ex. C Vol. III, p. 462) Because of problems in Holifield's prior employment record, a waiver had to be obtained so that Holifield could be hired by the Bureau of Prisons. Holifield was hired on the basis of both his credentials and his racial minority status. (doc. 8, ex. C Vol. I, p. 176, ex. C Vol. III, p. 550)

When Holifield arrived at FCI Marianna, the Health Services Division was under the supervision of Associate Warden Garland Jeffers. Holifield was informed by Jeffers that he would not be allowed supervisory powers until he passed a course entitled Introduction to Supervision. (doc. 32, ex. 17-B-29) Holifield was not informed of this requirement prior to or at the time he was appointed to the position. Jeffers withheld authority because Holifield was new to the Bureau of Prisons, and Jeffers felt it would be beneficial if Holifield had additional training in supervision. (doc. 8, ex. A Vol. III, p. 554-555)

On March 30, 1992, Holifield received his six-month performance appraisal from Jeffers.

---

[1]The CHP serves as Co-Department Head of the Health Services division, and is responsible for planning and directing the professional aspects of the health delivery program. The position involves a wide range of responsibilities. (doc. 8, ex. A (ex. C, att. C)) The official job description states that the CHP has "direct supervisory responsibility of all staff physicians and Chief Dental Officer." *Id.*

Holifield was favorably rated, and Jeffers noted that "Dr. Holifield is progressing extremely well...." (doc. 8, ex. B Vol. III, ex. A-4) On August 20, 1992, Holifield received an overall rating of "excellent" on his one-year performance appraisal. (doc. 8, ex. B Vol III, ex. A-5) Jeffers stated that Holifield "has completed a very successful probationary year...." *Id.* Warden Class concurred in the appraisal.

Holifield passed the supervision course on May 12, 1992. He sent a memorandum to Jeffers and Class asking for written clarification of his supervisory status. (doc. 32, ex. 17-B-29) Jeffers verbally granted supervisory authority to Holifield in May 1992, but Holifield demanded that the grant of authority be made in writing. He finally received written notice that he was CHP with full supervisory authority on November 3, 1992. (doc. 8, ex. A (ex. C, att. E))

On November 20, 1992, Dr. Elsy Rucker sent a memorandum to Class concerning Holifield's behavior. (doc. 8, ex. A ex. C, att. G)[2] Dr. Rucker stated that Holifield threatened to destroy her if she undermined him in staff meetings, and ordered her to clear out her office and move to a less desirable room in another location. *Id.;* (doc. 8, ex. C Vol. I, p. 180) On the day Class received the memorandum, he assigned Randy Ream, Camp Administrator, and Sterling Dawson, Paralegal, to investigate Rucker's claims of unprofessional conduct against Holifield. (doc. 8, ex. A ex. C, att. H; doc. 8, ex. C Vol. III, p. 466) *The parties dispute whether Holifield was aware of this investigation before he saw the EEO counselor on December 2, 1992.* (doc. 8, ex. C Vol. V, p. 950)

On December 2, 1992, Holifield went to Diana Graden, EEO counselor at FCI Marianna, for the purpose of finding out how to file an EEO complaint. (doc. 8, ex. C Vol. V, p. 898; doc. 32, ex. 17-C-5) Holifield was concerned about the lack of support of Class and Jeffers for his supervisory authority and position as CHP (doc. 8, ex. C Vol. V, p. 977-981) While Graden and Holifield were still in the counseling session, Ream and Dawson interrupted the meeting and escorted Holifield to another room. (doc. 8, ex. C Vol. V, p. 898) Ream and Dawson informed Holifield that they were

---

[2]Rucker began working at FCI Marianna in July 1992. The record shows that while the working relationship between Rucker and Holifield was initially satisfactory, the relationship began to deteriorate when Rucker suggested that Holifield make changes in the administration of the department. (doc. 8, ex. C Vol. II, p. 350-62)

investigating Rucker's claim of unprofessional behavior against Holifield, and proceeded to question Holifield regarding Rucker's allegations.

The next day, on December 3, 1992, an entry was made in Holifield's performance log stating that Holifield habitually arrived at work 10 to 15 minutes late and took longer lunch breaks than the allotted 30 minutes. (doc. 8, ex. B Vol. III, ex. A-13) Prior to December 3, 1992, Holifield had not received any log entries. (doc. 8, ex. C Vol. V, p. 898) Log entries were required to be made at least every three months, and preferably every month. (doc. 8, ex. C Vol. V, p. 824-25) Another entry was made in Holifield's performance log on December 9, 1992, stating that the pattern of Holifield's sick leave use appeared to be excessive. (doc. 8, ex. B Vol. III, ex. A-14) An additional entry was made in Holifield's performance log in December, dated "October, November, December 1992." (doc. 8, ex. B Vol. III, ex. A-15) The entry stated that Holifield had made successful changes in departmental policy, but noted that Holifield experienced "significant difficulty in maintaining a professional demeanor when it comes to verbally communicating with subordinates, peers and supervisors." The entry downgraded Holifield's appraisal rating on three of five performance elements.

On December 14, 1992, Holifield sent a lengthy memorandum to Jeffers complaining about lack of recognition from Jeffers concerning Holifield's treatment of a patient. Holifield stated that "[d]espite the actions taken by me that may have prevented the death of this patient, I have not received a single favorable word of recognition from you. Nor has there been a positive entry in my performance log reflecting the role that I played." (doc. 32, ex. 17-B-23) Holifield proceeded to give several examples of actions he felt did not receive sufficient recognition from Jeffers.

The relationship between Holifield and the staff and administration continued to deteriorate. On December 17, 1992, Jeffers confronted Holifield concerning his treatment of an inmate. The issue was brought to Jeffers' attention by Rucker. *Holifield sent a memorandum to Jeffers on December 21, 1992, accusing Jeffers of discrimination, (doc. 32, ex. 17-B-24), and Jeffers sent a memorandum to Class concerning the incident on December 28, 1992.* (doc. 32, ex. 17-B-26)

On December 21, 1992, Ream and Dawson issued their report to Class, in which they

concluded that the events of November 19 occurred as charged by Rucker. (doc. 8, ex. A, ex. 4i-27) They also concluded that Rucker's allegations concerning Holifield's poor management skills were substantially true. Ream and Dawson noted schisms between Holifield and his subordinates, his supervisor, and the support staff, and concluded that *"effective management of the department can only be restored by changing the department head,"* since Holifield lacked the supervisory experience and leadership skills to make needed changes. (doc. 8, ex. A, ex. 4i-27)

On December 28, 1992, Dr. Holifield was notified by Class that effective January 4, 1993, he was reassigned from his position as CHP to that of staff physician. (doc. 8, ex. A (ex. C, att. J)) Class took this action on the basis of the recommendation by Ream and Dawson. (doc. 8, ex. C Vol. III, p. 467) The memorandum from Class stated that the reassignment was not a disciplinary action. On December 29, 1992, Class circulated a memorandum stating that Dr. Rucker would serve as acting CHP. (doc. 8, ex. A (ex. C, att. K)) Associate Warden Danny L. Roswurm was to take over supervision of the medical department from Jeffers, and did so in January of 1993. (doc. 8, ex. C Vol. III, p. 513) *Class reassigned Jeffers to another position in part because of the strained relationship between Jeffers and Holifield.*

Holifield sent numerous memoranda to Class, Roswurm, and Hollingsworth on January 19, 1993, asking for the results of the investigation, asking why few African-Americans were present in the medical department at FCI Marianna, asking why no African-Americans were on the Executive Staff, questioning the entries in his performance log, and alleging discrimination as to his removal from the position of CHP. (doc. 8, ex. F. Vol. II, ex. 43) Holifield filed a complaint of discrimination on February 5, 1993, alleging that Warden Class and Associate Warden Jeffers initially denied him supervisory authority, and then removed him from supervisory authority, on the basis of racial discrimination. (doc. 8, ex. B Vol. IV, ex. 25c)

*On February 8, 1993, Roswurm sent a memorandum to Holifield detailing incidents that Roswurm considered unacceptable conduct on the part of Holifield.* (doc. 8, ex. A (ex. D, att. A)) Specifically, Roswurm stated that Holifield had displayed a belligerent attitude toward Rucker, and had failed to maintain a professional demeanor when communicating when subordinates, peers, and

supervisors. Holifield sent a memorandum to Roswurm on February 22, 1993, specifically rebutting each of Roswurm's allegations, and alleging discrimination on the part of the staff and administration.

Roswurm made an entry in Holifield's performance log on March 30, 1993, directing Holifield to treat staff in a professional manner, and to not impose frivolous requests on other staff's work schedules. (doc. 8, ex. B Vol. III, ex. A-17) On April 19, 1993, Holifield received a performance appraisal done by Roswurm which rated him lower on all elements than his previous appraisal. (doc. 8, ex. B Vol. III, ex. A-20) The appraisal stated that Holifield continued "to have significant difficulty in maintaining a professional demeanor when it comes to verbal communication with subordinates, peers, and supervisors." On April 23, 1993, Holifield wrote Roswurm a memorandum stating that the appraisal was the result of racism, and was intended to encourage Holifield to leave the institution. (doc. 8, ex. E Vol. I, ex. 1) During this time, Holifield sent several other memoranda to Roswurm and Class alleging discrimination on the part of officials at FCI Marianna. (doc. 8, ex. F. Vol. II, ex. 43)

On May 3, 1993, Holifield filed another complaint of discrimination with the EEOC. (doc. 8, ex. A, ex. D) The complaint alleged that various actions taken by officials at FCI Marianna, including harassment, perpetual investigations, false entries in Holifield's performance logs, and poor performance appraisals, were taken in reprisal for Holifield's filing of an EEO complaint. After Holifield filed this complaint, Jeffers asked personnel at FCI Marianna to specify what requests they had received from Holifield for information concerning the number of minority employees at the institution. Numerous personnel sent memoranda to Jeffers detailing information requested by Holifield concerning minority employees, their performance ratings, and EEO policies. (doc. 8, ex. B Vol. III, ex. B38-B43; ex. C Vol. V, p. 900-905) Personnel also sent memoranda to Jeffers informing Jeffers that Holifield was seen with Graden, the EEO counselor. (doc. 8, Ex. C Vol. V, p. 905)

In May 1993, Class asked for a peer review to focus on the clinical care provided by Holifield. Class asked for the peer review because *Edward Garisiak, the Regional Health Services*

*Administrator in Atlanta, had visited FCI Marianna and written Class a memorandum recommending such a review on the basis of Holifield's disruptive behavior and the poor morale of the health department.* (doc. 8, Ex. C Vol. III, p. 468-69) Two doctors from other Bureau of Prisons institutions, Dr. Michael Nelson and Dr. German Maisonet, conducted the review on May 24-25, 1993. (doc. 8, ex. A, ex. 4i-28) The reviewers concluded that the health services department at FCI Marianna was in a state of crisis, and cited the demoralization of the health services staff as the central reason for the crisis. The reviewers found that Holifield, through delaying treatment and evaluation of patients, displaying unprofessional behavior toward staff and other physicians, and causing conflict within the department and with his superiors, was the cause of the problem. The reviewers recommended removing Holifield from his position as staff physician at FCI Marianna, stating that "[i]t is unlikely that he would function effectively in any BOP facility...." (doc. 8, ex. A, ex. 4i-28)

On June 3, 1993, Holifield was escorted from his office and was told he was being placed on home duty status. (doc. 8, ex. C, Vol. V, p. 908-909) He was given a letter confirming this change of duty station. (doc. 8, ex. A (ex. E, att. J)). The letter stated that "[t]his is not a disciplinary or an adverse action." Roswurm and Ross escorted him out of the institution. On that same date, a memorandum was circulated within FCI Marianna by Captain R.K. Ross stating that Holifield was no longer authorized entrance into the institution. The memorandum stated that only the Warden or his designee could authorize Holifield's admittance, and that if admittance was authorized, "a representative from the Human Resources Department will provide escort."

On July 14, 1993, Holifield filed another complaint of discrimination alleging reprisal on the part of the administration at FCI Marianna. (doc. 8, ex. A (ex. E)) Holifield alleged that actions taken by officials at FCI Marianna, including the reassignment of Holifield to home duty, were taken in retaliation for his prior discrimination complaints. On July 23, 1993, Holifield was called back to the institution, and was given a letter of proposed removal. (doc. 8, ex. A, ex. 4n) The letter proposed that he be removed from his position for: (1) failure to provide adequate medical care; (2) inappropriate deferral of medical care; (3) unauthorized destruction of medical documents; and

(4) unacceptable professional behavior. On August 26, 1993, Holifield was given the decision letter removing him effective that same date. (doc. 8, ex. A, ex. 4d, 4e)

Holifield appealed his removal to the Merit Systems Protection Board ("MSPB") on September 3, 1993. (doc. 8, ex. B Vol. IV, ex. 25) In the appeal, Holifield alleged that his termination was without just cause, and was in retaliation for filing multiple complaints with the EEOC for racial discrimination and reprisal. On February 28, 1994, a MSPB Administrative Judge ("AJ") issued an initial decision affirming the agency's action and finding that the agency did not discriminate against Holifield. The AJ sustained the agency's charges of failure to provide adequate medical care and unacceptable professional behavior. The AJ found that Holifield failed to establish a causal connection between his race and his removal, since he failed to show that a similarly situated employee not of his race was treated more favorably. As to Holifield's retaliation claim, the AJ concluded that Holifield failed to show that his removal was for reasons other than his personal misconduct.

On June 17, 1994, the MSPB affirmed its initial decision issued on February 28, 1994, which found that the Bureau of Prisons had not engaged in discrimination as alleged by Holifield. (doc. 8, ex. B Vol. I, ex. 6) The EEOC affirmed the MSPB decision on October 5, 1994. (doc. 8, ex. B Vol. I, doc. 1) The EEOC found that Holifield failed to establish a prima facie case of race discrimination. As to Holifield's reprisal claim, the EEOC found that the agency articulated legitimate, non-discriminatory reasons for its action, and Holifield failed to demonstrate pretext. Holifield filed the present action on November 14, 1994.

II. *ANALYSIS*

A. *Summary Judgment Standard*

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue

of material fact." *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir.1993). Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992).

On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *McCabe v. Sharrett,* 12 F.3d 1558, 1560 (11th Cir.1994).

In this case, the plaintiff is proceeding *pro se,* so I will not hold him to strict accountability of compliance with the rules of procedure, and will construe the complaint more leniently than I would formal pleadings drafted by lawyers. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980). However, although the plaintiff's complaint is entitled to a less strict interpretation, the plaintiff must still meet the essential burden of establishing that there is a genuine issue as to a fact material to his case. *Brown v. Crawford,* 906 F.2d 667, 669-70 (11th Cir.1990).

**B. *Discussion***

**(1) Disparate Treatment**

The defendants argue that Dr. Holifield has failed to establish a prima facie case of unlawful race discrimination. Specifically, the defendants contend that Holifield was not qualified to retain his position as a prison physician, cannot offer evidence of a similarly situated and similarly mistreated employee, and has shown no evidence of racial bias or reprisal on the part of Roswurm or Class.

When a plaintiff appeals from a MSPB decision, the district court reviews discrimination claims de novo and non-discrimination claims on the administrative record under Title 5, United States Code, Section 7703(c). *Mason v. Frank,* 32 F.3d 315, 317 (8th Cir.1994); *Carr v. Reno,* 23 F.3d 525, 528 (D.C.Cir.1994); *Johnson v. Burnley,* 887 F.2d 471, 474 (4th Cir.1989).

*Discrimination claims are analyzed under the disparate treatment analysis common to Title VII employment discrimination cases. Id.*

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (1988). The plaintiff may establish a prima facie case of discrimination under Title VII on the basis of statistical proof of a pattern of discrimination [*see Wilson v. AAA Plumbing Pottery Corp.,* 34 F.3d 1024, 1027 (11th Cir.1994) ], or on the basis of direct evidence of discrimination, which consists of "evidence which, if believed, would prove the existence of discrimination without inference or presumption." *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir.1989). In the usual case, however, direct evidence is not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas,* a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677; *Coutu v. Martin Cty. Bd. of Cty. Commissioners,* 47 F.3d 1068, 1073 (11th Cir.1995); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994). *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination. *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1308 (8th Cir.1994). *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1093-4, 67 L.Ed.2d 207 (1981).

The defendants argue that Holifield has failed to point to a similarly situated, non-minority

employee who was treated more favorably than Holifield.[3]  As part of the Title VII plaintiff's prima facie case, the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than herself.  *Coutu v. Martin Cty. Bd. of Cty. Commissioners,* 47 F.3d 1068, 1073 (11th Cir.1995).  To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects.  *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir.1994);  *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992);  *Smith v. Monsanto Chemical Co.,* 770 F.2d 719, 723 (8th Cir.1985), *cert. denied,* 475 U.S. 1050, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986).  In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.  *Williams v. Ford Motor Co.,* 14 F.3d 1305, 1309 (8th Cir.1994).  *If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.  See, e.g., Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 182 (1st Cir.1989).

Dr. Holifield points to Dr. Hosain and Dr. Mirandella as similarly situated employees who were treated more favorably.  Dr. Hosain, Holifield's predecessor as CHP, was transferred from FCI Marianna following a peer review conducted on November 12-16, 1990.  (doc. 8, ex. B Vol III, ex. 17 D-2)[4] The reviewers found that Hosain maintained a minimal workload, and was often away from FCI Marianna.  The report stated that the health services department suffered from lack of leadership by the CHP, and that "the physicians are at odds with each other, as well as with the physician assistants."  The report concluded that Hosain's relationship "to all medical staff is at lowest

---

[3]The defendants also argue that Holifield was not qualified for his job at FCI Marianna. *Because the issue of Holifield's job performance is intertwined with the issue of whether his termination was pretextual, Holifield's job performance will not be examined until a later stage of the McDonnell Douglas analysis.  See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1124 n. 4 (7th Cir.1994);  *Weldon v. Kraft, Inc.,* 896 F.2d 793, 798 (3rd Cir.1990).

[4]Class requested the peer review because:  (1) in the six months prior to the request, four Physician's Assistants left the institution because of their treatment by the physicians;  and (2) four inmate deaths occurred in the six months prior to the review while under the care of the institution's physicians.  (doc. 8, ex. B Vol. III, ex. 17 D-2)

imaginable level." The report recommended that Hosain be removed from his position. On the basis of the report, Class suspended Hosain for fourteen days and reassigned him to another facility where he could work under supervision. (doc. 8, ex. C Vol. III, p. 478) Holifield contends that Hosain was treated more favorably, as he was transferred rather than terminated. However, *the undisputed testimony of Class is that he made phone calls in an effort to see if Holifield could be transferred to another institution, but no such opportunity was available.* (doc. 8, ex. C Vol. III, p. 473)

As to Mirandella, the record contains two performance evaluations of Mirandella, both of which give him an overall rating of excellent. (doc. 8, ex. F Vol. II, ex. 31) The record shows that Mirandella was criticized by the staff for his temper, and that Mirandella received an unfavorable performance log entry for shouting at a supervisor. (doc. 32, ex. 17-B-11)[5] However, his performance evaluations and the peer review reports all state that Mirandella was working at his full capacity, and no evidence in the record shows that the quality of his work was a concern at FCI Marianna. Mirandella was not accused of the same or similar conduct as Holifield, and is not similarly situated for purposes of establishing a prima facie case.

Holifield has failed to produce sufficient affirmative evidence to establish that the non-minority employees with whom he compares his treatment were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which he was discharged. Having failed to meet his burden of proving he was similarly situated to a more favorably treated employee, Holifield has not established a prima facie case. *Ricks v. Riverwood Int'l Corp.,* 38 F.3d 1016, 1018 (8th Cir.1994). *See Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 17 (1st Cir.1994); *Mitchell v. Toledo Hospital,* 964 F.2d 577, 584 (6th Cir.1992). Recognizing, however, that these are only a limited number of potential "similarly situated employees" when higher level supervisory positions for medical doctors are involved, I will also further analyze the plaintiff's claim.

Assuming that Holifield had met the requirement of producing evidence of similarly situated, non-minority employees being treated more favorably, he still has not established a prima

[5]The peer review performed in 1990 recommended that Mirandella not be considered for the position of CHP, but stated that Mirandella performed his duties well as staff physician. (doc. 8, ex. B Vol. III, ex. 17 D-2)

facie case. Holifield has presented no direct evidence of discrimination on the part of the defendants. Instead, he relies upon statistical and circumstantial evidence. As to statistical evidence, Holifield points to a 1992 Affirmative Action Task Force Report, a February 26, 1993 Task Force Report, and a 1995 Report of Minority/Non-Minority Disparate Discharge Rates issued by the United States Office of Personnel Management. (doc. 27, 28) The first two reports study the percentage of minorities in selected management positions within the Bureau of Prisons. These reports, which examine nationwide statistics, do little to advance Holifield's claims of discrimination in the specific environment of FCI Marianna. *See Diamond v. T. Rowe Price Associates, Inc.,* 852 F.Supp. 372, 408 (D.Md.1994). The 1992 Affirmative Action Task Force Report studies all federal employees, and is clearly not relevant in this case. While the statistics presented in these reports might conceivably be relevant to a disparate impact claim, they are not relevant to Holifield's discriminatory treatment claim. *See United States v. Redondo-Lemos,* 27 F.3d 439, 444 (9th Cir.1994).

Holifield also relies on the perception of other employees at FCI Marianna that racism is present at the institution. Several staff members, none of whom worked directly with Holifield, stated that they felt racism played a part in decisionmaking by the administration, and that not enough African-Americans were in positions of authority at FCI Marianna. (doc. 8, ex. E. Vol. I, ex. 6, 8, 18) None of these employees spoke of incidents of discrimination concerning Holifield; rather, they stated that it was their impression that discrimination existed at FCI Marianna. These generalizations are insufficient to establish a prima facie case of disparate treatment on the part of Holifield. *See Jatoi v. Hurst-Euless-Bedford Hospital Authority,* 807 F.2d 1214, 1220 (5th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988). In addition, the alleged biases of other staff members are not relevant. "The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case." *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 10 (1st Cir.1990). *See LaMontagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1412 (7th Cir.1984).

The central inquiry in evaluating whether the plaintiff has met his initial burden in a Title

VII case is whether the circumstantial evidence presented is sufficient to create an inference of discrimination. *Shah v. General Electric Co.,* 816 F.2d 264, 268 (6th Cir.1987). Sufficient evidence is simply not present in this case. At most, the evidence, taken in the light most favorable to plaintiff, supports the conclusion that incidents of discrimination on the basis of race have occurred at FCI Marianna. The evidence does not support an inference that Holifield was discriminated against on the basis of his race when he was reassigned from the CHP position or when he was terminated. While Holifield has testified that he felt discriminated against, his opinion, without more, is not enough to establish a prima facie case of race discrimination. *See Goldberg v. B. Green & Co.,* 836 F.2d 845, 848 (4th Cir.1988); *Locke v. Commercial Union Ins. Co.,* 676 F.2d 205, 206 (6th Cir.1982).[6]

But even assuming that Holifield has established a prima facie case, the defendant is still entitled to summary judgment. Once the plaintiff has established a prima facie case, thereby raising an inference that he was the subject of intentional race discrimination, the burden shifts to the defendant to rebut this inference by presenting legitimate, non-discriminatory reasons for its employment action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This intermediate burden is "exceedingly light." *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994). The defendants have fully met their burden in this case.

The report issued by Dawson and Ream on December 21, 1992 noted schisms between Holifield and colleagues, supervisors, and support staff, and concluded that "effective management of the department can only be resorted by changing the department head." (doc. 8, ex. A, ex. 4i-27) This report was based on interviews with supervisors and personnel in the medical department. Entries in Holifield's performance log noted Holifield's difficulties in "maintaining a professional

---

[6]Holifield also claims that he was discriminated against when he was required to take a supervisor's course before assuming supervisory duties as CHP. However, *the undisputed evidence is that other employees at FCI Marianna were required to take such a course before exercising supervisory powers.* Evidence in the record shows that Holifield was required to take the course because he had not previously worked in a position with the federal government. Holifield's conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment. *See Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133 (6th Cir.1993); *Pitts v. Shell Oil Co.,* 463 F.2d 331 (5th Cir.1972).

demeanor" in "communicating with subordinates, peers, and supervisors." (doc. 8, ex. B Vol. III, ex. A-15) Various other memoranda and performance log entries criticize Holifield for his inability to effectively communicate and relate with staff and supervisors. During this time period, the medical staff also criticized Holifield for delayed treatment of patients. The peer review of Holifield performed in May 1993 made the same criticism, concluding that the medical department was in a state of crisis, due largely to the demoralization of the staff resulting from Holifield's behavior. The two doctors performing the peer review found that Holifield delayed treatment and evaluation of patients, displayed unprofessional behavior toward staff and physicians, and caused conflict within the department and with the administration. The reviewers recommended removing Holifield from his position as staff physician, and stated that "[i]t is unlikely that he would function effectively in an BOP facility...." (doc. 8, ex. A, ex. 4i-28) There is nothing in the record to indicate that these independent reviews were biased or were not objective.

The defendant has clearly met its burden of presenting legitimate, non-discriminatory reasons for the reassignment of Holifield to staff physician, and for Holifield's termination. *See Spearmon v. Southwestern Bell Telephone Co.,* 662 F.2d 509, 511 (8th Cir.1981). Where the defendant meets this burden, the plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973); *Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 796 (11th Cir.1988). This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 422 (1993). *See Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 346-47 (7th Cir.); *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994). Put another way, once the employer succeeds in carrying its intermediate burden of production, the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against him because of his race. *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994).

Holifield essentially argues that the defendants, in an effort to conceal their discrimination,

have made it appear that Holifield was the cause of the conflict with the health services department at FCI Marianna. Holifield contends that he acted appropriately with his relations with personnel at FCI Marianna, and that the reasons put forth by the defendants are pretextual.[7]

The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance. *Billet v. CIGNA Corp.,* 940 F.2d 812, 818-22 (3rd Cir.1991). *See Sempier v. Johnson & Higgins,* 45 F.3d 724, 731 (3rd Cir.1995); *Gray v. U. of Arkansas at Fayetteville,* 883 F.2d 1394, 1401 (8th Cir.1989); *Weihaupt v. American Medical Ass'n,* 874 F.2d 419, 428 (7th Cir.1989); *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980) (perception of decisionmaker, not employee, is relevant). Thus, where the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence. *Billet v. CIGNA Corp.,* 940 F.2d at 818-22.

Here, the defendants have produced ample documentary evidence showing that Holifield was not performing the job of CHP or staff physician according to their requirements. *As to Holifield's contention that this evidence was created solely in retaliation for Holifield's discrimination complaints, the other physicians and staff at the health services department who worked with Holifield on a daily basis all stated that Holifield had a poor relationship with staff and administrators, that Holifield was a disruptive influence on the department, and that Holifield delayed treatment and evaluation of patients.* (doc. 8, ex. E Vol. I, ex. 16-17, 22-23; ex. E Vol. II, ex. 49; ex. F Vol. I, ex. 10-12, 14, 15, 22-24) Class testified that the decision to terminate Holifield was based on the fact that Holifield "was such a disruptive factor ... that not only was he not functioning at an adequate level, but that he was destroying the ability of the rest of the department to function." (doc. 8, ex. C Vol. III, p. 472)

Holifield has failed to establish that the defendants' proffered reason is unworthy of

---

[7]Holifield also argues that his previous performance evaluations show that he was performing adequately, and support his claim. However, the issue is whether Holifield was performing well at the time of his reassignment and at the time of his termination. *See, e.g., Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 336 (7th Cir.1991).

credence, or that the defendants were more likely motivated by a discriminatory reason in taking their actions against Holifield. *See Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 336 (7th Cir.1991). His assertion that the defendants began documenting an untrue assessment of his performance in order to terminate him because of his race is unsubstantiated. Since the defendants have proffered evidence supporting a legitimate, nondiscriminatory reason for Holifield's reassignment from the CHP position and his termination, and Holifield has not come forward with any evidence to show that this reason is pretextual, summary judgment is warranted. *See Richmond v. Board of Regents of University of Minnesota,* 957 F.2d 595, 598 (8th Cir.1992); *Karazanos,* 948 F.2d at 336; *Mason v. Pierce,* 774 F.2d 825, 829 (7th Cir.1985).

**(2) Retaliation**

Holifield alleges that in retaliation for his complaints of racial discrimination, the defendants undermined his authority as CHP, demoted him to the position of staff physician, commenced investigations against him, and ultimately terminated him from his employment. The defendants contend that Holifield's allegations are not supported by the facts, and that his disruptive behavior and professional misconduct were the basis for the defendants' actions.

To establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *Meeks v. Computer Associates Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994); *E.E.O.C. v. Ohio Edison Co.,* 7 F.3d 541 (6th Cir.1993); *Archuleta v. Colorado Dept. of Institutions,* 936 F.2d 483 (10th Cir.1991). To recover for retaliation, the plaintiff "need not prove the underlying claim of discrimination which led to [his] protest;" however, the plaintiff must have had a reasonable good faith belief that the discrimination existed. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989). *To meet the causal link requirement, the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571-72 (11th Cir.1993). *The plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment*

*action against the plaintiff. Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993); *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1524 (11th Cir.1991). The employer's awareness of the statement may be established by circumstantial evidence. *Id.*

Once the plaintiff establishes his prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571-72 (11th Cir.1993). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. *Meeks,* 15 F.3d at 1021; *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993).

Here, it is clear that Holifield engaged in statutorily protected expression. Holifield filed EEO complaints and voiced his concerns about racial discrimination to his superiors. Both forms of expression are protected under Section 704(a). *Rollins v. State of Florida Dept. of Law Enforcement,* 868 F.2d 397, 400 (11th Cir.1989); *Armstrong v. Index Journal Co.,* 647 F.2d 441, 448 (4th Cir.1981). It is also clear that Holifield suffered adverse employment action during this time; he was reassigned from CHP to staff physician, and was then terminated from his employment altogether. It is the causal relationship between these events that is in dispute.

The record shows that Holifield sought counseling on December 2, 1992, in anticipation of filing a discrimination complaint. The next day, an unfavorable entry was made in Holifield's performance log, the first entry made in the log since Holifield began his employment in July 1991. Several other unfavorable entries were made in December 1992, and his appraisal rating, previously high, was downgraded. Ream and Dawson, who were aware of Holifield's discrimination complaint, filed their report on December 21, 1992, recommending that Holifield be removed from his position as CHP. The report stated that Holifield had been "vocal in his assertion of problems with his supervisor, especially lack of support and discrimination," and that in light of the complaint filed on December 2, 1992, Holifield could not continue to work with Jeffers. (doc. 8, ex. A, ex. 4i-27) On December 28, 1992, Class, acting on the basis of the report, notified Holifield that he was reassigned from CHP to staff physician.

A genuine issue of material fact remains as to Holifield has established a prima facie case of retaliation concerning his reassignment, but, for purposes of this analysis, I give all inferences in his favor and accept that he has met this initial burden. While evidence of discrimination is slight, in the context of retaliation, the plaintiff "need not prove the underlying claim of discrimination which led to [his] protest." *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989). Taken in a light most favorable to the plaintiff, the evidence shows that Class was aware of the protected activity at the time he reassigned Holifield, and that "the protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571-72 (11th Cir.1993).

The other alleged incident of retaliation concerns Holifield's termination. Holifield filed a complaint of discrimination on February 5, 1993. During March and April, Holifield received several unfavorable performance log entries, and his performance appraisal was downgraded to minimally successful. In response, Holifield sent memoranda to Roswurm and Class alleging discrimination as the basis for his appraisal. On May 3, 1993, Holifield filed another discrimination complaint. After Holifield filed this complaint, Jeffers asked staff at the institution to inform him what requests Holifield had made for information concerning the number of minority personnel at the institution. Class asked for a peer review to focus on the clinical care provided by Holifield. On June 3, 1993, Holifield was escorted from his office and placed on home duty status. Holifield filed another complaint of discrimination on July 14, 1993. On July 23, 1993, Holifield was given a letter of proposed removal, and was ultimately terminated on August 26, 1993.

As with the first alleged incident of retaliation, the evidence, taken in a light most favorable to the plaintiff, shows that the defendants were aware of the protected activity during the time Holifield was given poor performance appraisals, investigated, and ultimately removed. I find that Holifield has met his initial burden as to the alleged incident of retaliation. Thus, I next examine the defendant's reasons for the negative actions.

As stated earlier with regard to Holifield's claim of race discrimination, the defendant has definitely met its burden of presenting legitimate, non-discriminatory reasons for the reassignment

of Holifield and his ultimate termination. As with the discrimination claim, Holifield has failed to demonstrate that the employer's proffered explanation is a pretext for retaliation. *Meeks,* 15 F.3d at 1021; *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993). *The peer review, performance appraisals, and testimony of supervisors, colleagues, and medical staff all show that the work for which Holifield was responsible was not performed properly during the period at issue.* In this case, the defendant's evidence of a legitimate, non-discriminatory reason for its action is so strong as to rebut completely the inference raised by the plaintiff's prima facie case of retaliation. *See Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir.1987). The evidence supporting Holifield's prima facie case is simply not sufficient to create an issue of fact in light of the substantial evidence of lawful motive presented by the defendant. As a result, the defendant is entitled to summary judgment on the plaintiff's retaliation claim.

**III. *CONCLUSION***

For the reasons discussed above, the defendant's motion for summary judgment is GRANTED. (doc. 8) The Clerk is directed to enter final judgment in favor of the defendant and against the plaintiff, together with taxable costs.

DONE AND ORDERED this 11th day of September, 1995.

/s/ Roger Vinson

Roger Vinson

United States District

Judge