[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15501
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-00166-CV-JTC-1

WELTON THOMAS,

Plaintiff-Appellant,

versus

THE DEPARTMENT OF CORRECTIONS
FOR THE STATE OF GEORGIA,

Defendant-Appellee,

FRED DENNIS, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 4, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Welton Thomas appeals from the district court's order granting summary judgment in favor of the Georgia Department of Corrections ("DOC") as to his claims for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964. On appeal, Thomas argues that the district court erred by granting summary judgment as to his race discrimination claim. Specifically, he argues that the court erred in finding that he failed to identify a similarly situated white employee who received more favorable treatment than he received. Thomas also asserts that the district court erred in applying the "nearly identical" standard for proffered comparators, arguing that this standard is too stringent. In addition, Thomas contends that the following evidence gave rise to an inference of discrimination: (1) the DOC failed to diligently maintain various files related to his employment; (2) his performance reviews, including his final performance review, indicated that he met or exceeded job expectations; and (3) DOC supervisors seized his state-issued firearm without just cause.

Thomas further argues that the court erred in granting summary judgment as to his retaliation claim. He asserts that the court erroneously found that the DOC contemplated his termination before he engaged in activity that is protected under

Title VII, as there was no competent evidence showing that the DOC contemplated his termination before he filed an internal grievance on November 5, 2004.

For the reasons set forth below, we affirm.

**I.**

Thomas, who is African-American, filed a complaint in federal court, naming the DOC as a defendant.[1] In his complaint, Thomas alleged that he had been employed by the DOC as a probation officer in its Clayton County office, and further alleged that the DOC wrongfully had terminated his employment. In connection with his termination, Thomas raised two claims under Title VII—disparate treatment on the basis of his race, and retaliation for engaging in an activity that is protected under Title VII. The DOC answered, generally denying liability.

During discovery, Thomas requested that the DOC produce a file known as his "local management file" or "local performance file." The DOC responded that it was unable to locate this file. Although Thomas filed a motion to compel the DOC to produce this file, he did not request any type of discovery sanction against the DOC. The DOC eventually located and produced Thomas's local management

---

[1] Although Thomas initially named Fred Dennis and Joel Mayo as defendants, Dennis and Mayo were dismissed from the lawsuit, and Thomas does not contest this dismissal on appeal.

file.  Robert Haness, who was the field operations manager (and appointing authority) during the period relevant to this appeal, testified that this file was eventually located in his former office.  The office was unoccupied at the time that the file was discovered.  Haness believed that the file may have been misplaced because it had been in his possession and another employee's possession at different points in time, and the file was boxed up with other files when he and this other employee had moved to different offices.  Haness also testified that he would have kept a file concerning disciplinary actions against Thomas, but did not know of the present location of this disciplinary file.

Regarding the events surrounding Thomas's termination, the undisputed facts showed that, because Thomas was classified as a "non-exempt" employee under the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA"), he was required to receive compensatory leave in compensation for each minute of overtime work.  The DOC enforced this regulation by requiring that a non-exempt employee earn compensatory leave for any time he worked in excess of 171 hours during a 28-day work cycle.  When an employee earned compensatory leave in this manner, he was required to take this leave during the next work cycle.  In addition, the DOC's standard operating procedure ("SOP") required that each employee accurately and truthfully report the hours that he had worked, and that an employee

4

record and account for all of the time that he had worked, including overtime.

Both Haness and Joel Mayo, the Chief Probation Officer for Clayton County, regarded FLSA regulations as a serious matter because the DOC's failure to comply with these regulations could subject it to liability. In addition, Mayo testified that DOC policy left the number of verbal warnings that an employee received to the discretion of the employee's particular supervisor.

Fred Dennis, Thomas's immediate supervisor, believed that, when an employee worked over his maximum number of hours for a period, it negatively affected office performance. He explained that this was because the employee who had earned compensatory leave was then required to take this leave during a work period where he could have numerous scheduled court appearances and meetings with probationers.

Thomas's final performance review covered the period of July 1, 2003, through June 30, 2004, and was presented to him in September 2004. This review stated that Thomas had met or exceeded his job requirements in all areas.

During 2004, Thomas worked more than 171 hours during four different work cycles. On at least one occasion, Dennis told Thomas to "watch his hours," so he did not "burn [him]self out." Dennis also told Thomas that he did not want the DOC to lose any more good officers. On October 26, 2004, Dennis gave

Thomas a letter of concern, which informed Thomas that he repeatedly had worked over his 171-hour limit without prior authorization to do so, in violation of DOC policy. The letter also explained that Thomas's behavior could result in hardship for the department because it resulted in his taking mandatory compensatory leave from work. The letter warned Thomas that he was subject to "more severe discipline" if his behavior continued. Following his receipt of this letter, Thomas worked during several days on which he was scheduled to be on leave from work. Thomas, however, failed to report these hours on his time sheet.

On October 29, 2004, Dennis drafted a letter of reprimand, in which he related that Thomas had continued to violate the DOC's overtime policy after he received the letter of concern. Although Dennis did not deliver this letter to Thomas, Haness ultimately received a copy of this letter. Haness testified that Dennis lacked authority to issue a letter of reprimand, but that Haness had treated Dennis's letter as a chronology of events related to Thomas's overtime violations.

In a letter to the DOC's legal department, which was dated November 2, 2004, Haness recommended that Thomas be terminated for his failure to follow a supervisor's orders, as well as for violating DOC policy by working unauthorized overtime hours and falsifying his time sheets. La'Quandra Smith, supervising counsel for the legal department, verified that her initials were on this document,

6

and that the date "11/2/2004" was written next to her initials. Smith testified that, although the legal department's administrative assistant typically stamped documents upon their receipt, she may have initialed and dated Haness's November 2 letter in order to reflect its receipt during a period where the legal department did not have an administrative assistant. Neither Haness nor Smith had a specific recollection of sending or receiving this letter on November 2. According to Mayo, he investigated Thomas's overtime violations between November 3, 2004, and November 17, 2004.

On November 3, Mayo and Dennis requested that Thomas turn over his state-issued firearm. Mayo testified that they had requested that he turn over his firearm because he had received reports from other employees that Thomas had engaged in "unstable" and "irrational" behavior. Thomas complied with Mayo's and Dennis's request that he relinquish his firearm. On November 5, 2004, Thomas delivered a written grievance to Albert Spears, the DOC's former grievance coordinator. In his grievance, Thomas alleged that he was the victim of racial discrimination, and that he had been subjected to a hostile work environment.

Spears testified that he had understood that Thomas's November 5 grievance was related to the removal of his firearm. Spears reviewed Thomas's grievance, and found that he had failed to raise a grievable issue. When Spears received a

grievance, he typically opened a file, which would consist of his notes concerning discussions that he had with employees concerning the grievance. He was required to retain grievance files for two years. Spears, however, retained the files for three years before purging them. If a grievance was the subject of pending litigation, Spears would set the file aside and would not purge it. Upon being informed that the November 5 grievance file was missing, Spears stated that he did not know why this file would be missing, but suspected that the current grievance officer may have purged them if he or she did not know that there was pending litigation regarding Thomas.

On December 1, 2004, Candy Sarvis, who served as assistant counsel in the DOC's legal department, issued a memorandum regarding Haness's recommendation that Thomas be terminated. Sarvis stated that, although the typical disciplinary measure for DOC policy violations was a temporary pay decrease, she believed that Thomas's termination would be "defensible" due to his repeated refusal to comply with the DOC's overtime policy. On December 3, 2004, Haness signed a formal notice of adverse action related to Thomas's termination. Haness explained that he had believed that Thomas's termination was warranted due to the repetitive nature of Thomas's overtime violations, and their potential to subject the DOC to liability under federal law. Haness also testified that he had not been aware

8

that Thomas had filed a grievance on November 5. Thomas received the notice of adverse action on December 11, 2004. The notice informed him that he had been terminated due to FLSA violations.

In its motion for summary judgment, the DOC argued that Thomas's disparate treatment claim should be dismissed because he had failed to identify a similarly situated comparator who was treated more favorably than he was treated. Specifically, the DOC argued that Thomas could not identify a white employee who had engaged in misconduct that was "nearly identical" to his own misconduct. In addition, the DOC argued that Thomas's retaliation claim should be dismissed because his alleged protected activity—his filing of a grievance on November 5, 2004—occurred after his termination had already been proposed by Haness on November 2, 2004. Thus, the DOC argued, Thomas could not demonstrate a causal connection between his termination and any protected activity.

Thomas opposed the DOC's motion for summary judgment. In his opposition, Thomas identified Shawn Waldroup, a white DOC employee, as a similarly situated employee who was treated more favorably than him by the DOC after engaging in misconduct that was nearly identical to, or more serious than, his own misconduct. Thomas alleged, and the DOC did not dispute, that during 2006, Waldroup, who was a surveillance officer, falsified his time sheets by reporting that

9

he had worked hours that he did not actually work. In addition, Waldroup falsified reports that he had visited probationers, when he had not made these visits.

In his opposition to summary judgment, Thomas further alleged that Dennis had served as Waldroup's direct supervisor for approximately six months. At the time that he began supervising Waldroup, Dennis was aware that Waldroup's previous supervisor had issued three or four written warnings to him about his falsification of time sheets and probationer reports. Dennis eventually learned that Waldroup had repeated this misconduct while under his supervision, and gave Waldroup a verbal warning. According to Thomas, a few months after giving Waldroup this warning, Dennis learned that Waldroup had falsified additional probationer reports, and terminated Waldroup. The DOC did not dispute these facts. The evidence also shows, however, that, although Dennis testified that the instances of Waldroup's misconduct and Thomas's misconduct were equally serious, comparing their violations was like comparing "apples and oranges."

In his opposition to summary judgment, Thomas further argued that additional evidence gave rise to an inference of racial discrimination—namely, the DOC's failure to maintain his files, the removal of his firearm, and the fact that he had received largely favorable performance reviews. Thus, he contended that this evidence also precluded summary judgment as to his racial discrimination claim.

10

Addressing his retaliation claim, Thomas argued that summary judgment was not appropriate because he had established that he was terminated after he filed a grievance on November 5, and that he had thus demonstrated a *prima facie* case of retaliation. Thomas also argued that the DOC had failed to authenticate Haness's November 2 letter with competent evidence. In addition, Thomas asserted that DOC regulations required that a supervisor complete an adverse action form in order to terminate an employee, and pointed out that Haness did not sign such a form until well after November 5.

In recommending that the district court grant summary judgment in favor of the DOC as to Thomas's race discrimination claim, the magistrate judge found that Thomas and Waldroup, his proffered comparator, were not similarly situated. The magistrate reasoned that, regardless of whether Waldroup's misconduct was more or less severe than Thomas's misconduct, their offenses were not "nearly identical," as Thomas's overtime violations could subject the DOC to FLSA liability, and Waldroup's misconduct would not have this effect. In addition, the magistrate determined that the discipline imposed upon Thomas and Waldroup was "not significantly dissimilar."

In recommending summary judgment as to Thomas's retaliation claim, the magistrate found that there was no causal connection between Thomas's November

11

5 grievance and his termination, because Haness's November 2 letter to the legal department showed that he had contemplated Thomas's termination before Thomas filed the grievance. The magistrate determined that Thomas had not pointed to facts that placed the date of Haness's letter in dispute. In addition, the magistrate found that the fact that Haness's November 2 communication was not in the format of an official adverse action form was immaterial, as no specific type of form was required in order to demonstrate that Haness contemplated Thomas's termination before November 5.

Thomas filed objections to the magistrate's report and recommendation, arguing that he and Waldroup were similarly situated, and that the magistrate had erred by applying a "nearly identical" comparator standard. Thomas further argued that Waldroup had received more favorable treatment than he had received because Waldroup received multiple warnings about his misconduct before Dennis became his supervisor. Thomas also argued that the magistrate failed to consider additional evidence of discrimination, pointing to the same evidence that he had pointed to in his opposition to summary judgment. Addressing his retaliation claim, Thomas reasserted the arguments that he had raised in his brief opposing summary judgment.

The district court adopted the magistrate's report and recommendation.

12

Addressing Thomas's objections, the court found that the magistrate had correctly applied the "nearly identical" standard, and that Waldroup was not similarly situated to Thomas. In addition, the court found that the DOC's failure to diligently maintain Thomas's files did not indicate racial animus. Finally, the court determined that Haness's November 2 letter demonstrated that he had contemplated Thomas's termination before Thomas filed his November 5 grievance, and that Thomas had thus failed to show a causal connection between his termination and activity protected under Title VII. Accordingly, the court entered summary judgment in favor of the DOC.

## II.

We review the district court's ruling on summary judgment *de novo*. *Rojas v. Florida*, 285 F.3d 1339, 1341 (11th Cir. 2002). The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Rojas*, 285 F.3d at 1341-42 (quotation omitted).

Title VII provides "that it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (quotation omitted). When relying on circumstantial evidence to support a discrimination claim, a plaintiff may establish a *prima facie* case by showing that: "(1) he belongs to a [protected class]; (2) he was subjected to [an] adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Id.* at 1562. If a plaintiff cannot identify a similarly situated comparator who was treated more leniently than himself, then "summary judgment is appropriate where no other evidence of discrimination is present." *Id.*

"When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quotation omitted). In *Burke-Fowler*, we clarified that a plaintiff may demonstrate that another employee was similarly situated to himself by showing that the comparator's misconduct was "nearly identical" to his own. *Id.* "The most

14

important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1281 (11th Cir. 2008). "[D]isciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis." *Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989). 1541. This is because the fact that different supervisors addressed instances of misconduct may explain a difference in the means of discipline employed to address the misconduct. *See id.*

If the plaintiff succeeds in establishing his *prima facie* case, then he has raised an inference of discrimination, and "the burden shifts to the defendant to rebut this inference by presenting legitimate, non-discriminatory reasons for its employment action." *Holifield*, 115 F.3d at 1564. "Where the defendant meets this burden, the plaintiff has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Id.* at 1565. "This demonstration merges with the plaintiff's ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." *Id.* A defendant's proffered reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160,

15

1163 (11th Cir. 2006) (*quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).  "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it."  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).

In the context of addressing a district court's imposition of sanctions for discovery violations, we have held that a court should draw an adverse inference from a party's failure to preserve evidence only "when the absence of that evidence is predicated on bad faith."  *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009).  In addition, "mere negligence in losing or destroying records is not sufficient to draw an adverse inference."  *Id.*

Here, the district court did not err in granting summary judgment in favor of the DOC as to Thomas's race discrimination claim.  In light of our decision in *Burke-Fowler*, the district court appropriately applied the "nearly identical" standard to determine whether Thomas and Waldroup were similarly situated.  In addition, the court did not err in finding that Thomas and Waldroup were not similarly situated.  While both Thomas and Waldroup falsified time sheets, there were material differences between their misconduct, as Thomas's misconduct could have subjected the DOC to FLSA liability, and there is no evidence that Waldroup's

16

misconduct could have had this consequence.

Moreover, even if we were to assume that Thomas and Waldroup engaged in nearly identical misconduct, Thomas has not demonstrated that Waldroup received more lenient treatment than he received. After Dennis became Waldroup's immediate supervisor, he gave Waldroup one verbal warning regarding his misconduct before recommending his termination. Before he was terminated, Thomas had at least one conversation with Dennis regarding his overtime hours, and received a written warning from Dennis regarding his overtime violations. As a result, it appears that Dennis gave Thomas more pre-termination warnings than he gave Waldroup. While Thomas emphasizes that Waldroup received several warnings regarding his misconduct before Dennis became his supervisor, this does not necessarily establish that Waldroup received more favorable treatment within the meaning of Title VII, as disciplinary measures taken by different supervisors are not necessarily comparable. Significantly, the record here shows that the number of warnings an employee received before adverse action was taken against him was left to the discretion of the employee's immediate supervisor.

The additional evidence that Thomas points to on appeal does not give rise to an inference of racial discrimination. Thomas fails to explain how the removal of his firearm demonstrated racial animus, and fails to point to any white employee

17

who was treated more favorably than himself in a similar situation. While Thomas

emphasizes his favorable performance reviews, he does not dispute that Dennis

warned him that he could be disciplined for his continued overtime violations.

Accordingly, Thomas's sole remaining evidence of discrimination is the DOC's

failure to diligently preserve his files. Notably, the DOC eventually located and

produced Thomas's local management file, and Thomas did not argue below that

the DOC's negligence toward his files warranted an adverse inference, or any other

type of discovery sanction. Moreover, there is no evidence indicating that the

DOC's failure to diligently preserve Thomas's files was due to bad faith, as

opposed to mere negligence. As a result, Thomas's evidence of the DOC's

negligence toward his files was not sufficient to raise an inference of racial

discrimination. For this reason, and the additional reasons set forth above, the

district court did not err in finding that Thomas failed to establish a *prima facie* case

of racial discrimination.[2]

Finally, even assuming that the evidence could establish a *prima facie* claim

of race discrimination, the DOC articulated a legitimate, non-discriminatory reason

for Thomas's termination—his repeated failure to abide by the overtime policy,

---

[2] Thomas points to various additional facts which, he asserts, indicate racial discrimination. Thomas's argument concerning these facts is meritless and does not warrant further discussion.

18

which exposed the DOC to FLSA liability.  For the reasons set forth above, Thomas's evidence of the DOC's negligence toward his files, together with the additional evidence he points to in his brief, is insufficient to rebut the DOC's proffered reason for his termination, and to show that this reason is a mere pretext for racial discrimination.  Accordingly, the district court did not err in granting summary judgment in the DOC's favor as to Thomas's race discrimination claim.

**III.**

"To establish a prima facie case of retaliation, the plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events."  *Holifield*, 115 F.3d at 1566.  In addition, we have explained that:

> To recover for retaliation, the plaintiff need not prove the underlying claim of discrimination which led to his protest; however, the plaintiff must have had a reasonable good faith belief that the discrimination existed.  To meet the causal link requirement, the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.  The plaintiff must at least establish that the employer was actually aware of the protected expression at the time the employer took adverse employment action against the plaintiff.  The employer's awareness of the statement may be established by circumstantial evidence.

*Id.* (quotations and alterations omitted).  "When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse

19

employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

The district court did not err in granting summary judgment in favor of the DOC as to Thomas's retaliation claim. The evidence showed that Haness contemplated Thomas's termination before Thomas filed a grievance on November 5. Regardless of whether Haness could accurately remember the date on which he sent a letter proposing Thomas's termination to the legal department, Smith testified that her initials appeared on this document, and that the date next to her initials read "November 2." She explained that she may have initialed the document because the department lacked an administrative assistant during this period. Moreover, the undisputed evidence showed that Mayo began investigating Thomas's overtime violations and time sheet falsification by November 3. For these reasons, the undisputed facts demonstrate that the DOC contemplated Thomas's termination before he filed a grievance on November 5. While Thomas points out that Haness did not complete an adverse action form before he filed a grievance on November 5, there is no requirement that, in order to show the absence of a causal connection, an employer must show that it formally initiated an adverse action before the employee engaged in protected activity. Moreover, Haness testified that he was not aware that Thomas had filed a grievance, and Thomas has failed to point to any evidence

20

demonstrating otherwise. As a result, the district court did not err in finding that there was no evidence of a causal connection between Thomas's termination and protected activity, and did not err in granting summary judgment in favor of the DOC as to Thomas's retaliation claim.

**AFFIRMED.**