**Rhonda WHITE, Plaintiff,**

v.

**VERIZON SOUTH, INC., Defendant.**

No. CIV.A.03–T–334–S.

United States District Court,
M.D. Alabama,
Southern Division.

Dec. 29, 2003.

Banks Thomas Smith, Robin C, Freeman, Hall Smith & Jones, Dothan, AL, for Rhonda White, plaintiff.

David Earl Allred, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, William C. Martucci, Brent N. Coverdale, Shook, Hardy & Bacon, LLP, Kansas City, MO, for Verizon South, Inc., defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Rhonda White filed this lawsuit claiming that she was not promoted to a position because of her gender, in violation of 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, commonly known as Title VII of the Civil Rights Act of 1964, as amended. She names as the defendant her current employer, Verizon South, Inc. She has properly invoked the jurisdiction of this court under 42 U.S.C.A. § 2000e–5(f)(3).

Currently before the court is Verizon's motion for summary judgment, filed September 2, 2003. For the reasons that follow, Verizon's motion will be granted in part and denied in part.

## I. SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... [her] case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... [her] case at trial.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc)). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To this end, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

This case arises out of the events surrounding the denial of White's application for a promotion to the position of "cable splicer"; a splicer puts telephone cable together in areas of new construction. Verizon hired White as a "locator" in January 2000; a locator's job is to locate buried power lines for customers and mark the position of such lines. Splicers receive higher salaries than locators, and are classified as ranking higher than locators. In

January 2002, two splicer positions became available, and White applied for them. White's name, along with the names of eleven men who also applied, was submitted to Hiring Manager Don King for his consideration.

In February 2002, King selected Shane Craig to fill one of the splicer positions. Craig was a lateral transferee who was already at the same pay grade. However, after initially accepting the job, Craig decided he did not want to transfer and declined the position. King selected Russell Martin as the second splicer; Martin was a technician, a job which is classified higher, and thus pays more, than a locator. Several times, White had been offered promotions to the technician position but refused them; she did not feel she would enjoy that type of work.

After being informed that Craig declined the transfer, King selected David Griffin for a splicer position. Philip Hunter, who supervised White, Martin, and Griffin, recommended Griffin when King asked Hunter for his "best."[1] Griffin, like Martin, was a technician. Although a locator met the minimum qualifications for a splicer position, only one other applicant (a male who was not hired) was a locator. The remaining applicants were technicians or higher.

On March 4, during the application procedure, White had an informal interview, or discussion, with King regarding the re-quirements of the splicer position. According to White, King asked her why she was so interested in the job. When White responded that she thought she would enjoy the work, King told her that the job included a lot of heavy lifting and that he did not think she could do it.[2] King warned her that, if she took the splicer job and could not do it, she would not be allowed to return to her old position. White stated that she believed she could do the job. Then King asked her to lift a heavy, 32-rung ladder by herself and put it in his truck. When White refused, King laughed at her and said she was ignoring him.[3] Verizon has not claimed that lifting a 32-rung ladder alone is a job requirement for splicers, and it appears that such a ladder normally requires two people to lift it.[4]

Applicants, besides White, raised concerns with Union President Ray Richardson about King's hiring practices. Richardson contacted Verizon Specialist Human Resources Business Partner Nell Penny, and reported that several employees were upset, and that a female employee had been told by King that the job would be very difficult. Penny requested written statements from all employees who had a complaint against King. On March 15, Richardson faxed White's statement to Penny, and faxed the remaining statements to Penny on

1. Defendant's brief in support of motion for summary judgment, filed September 2, 2003 (Doc. no. 12), exhibit 19 (declaration of Don King).

2. Plaintiff's brief in opposition to motion for summary judgment, filed October 16, 2003 (Doc. no. 16), exhibit 1 (deposition of Rhonda White).

3. *Id.*

4. Plaintiff's brief in opposition to motion for summary judgment, filed October 16, 2003 (Doc. no. 16), at 15. The court is aware, based on Verizon's attorneys' representations during the pretrial trial conference held on December 1, 2003, that there are factual questions remaining regarding the length of the ladder King asked White to lift. Nevertheless, such a dispute does not alter this court's decision regarding the motion for summary judgment, as, at this point, the evidence must be construed in light most favorable to the non-moving party.

March 20. Penny determined that King had not violated company policy, but she did speak with him about the need to be more careful when conducting interviews.[5]

White filed a timely complaint with the Equal Employment Opportunity Commission on May 28, 2002.

## III. DISCUSSION

Title VII provides that, "It shall be an unlawful employment practice for an employer ... to discharge any individual[ ] or otherwise to discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C.A. § 2000e–2(a). "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice ..., the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C.A. § 2000e–5(g)(1).

In 1991, Title VII was amended to expand the available remedies. The 1991 amendments provide, in relevant part, that, "In an action brought by a complaining party ... against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages ..., in addition to any relief authorized by [42 U.S.C.A. § 2000e–5(g)], from the respondent." 42 U.S.C.A. § 1981a(a)(1).

The 1991 amendments further clarified or redefined when liability attaches under Title VII. The amendments provide that "an unlawful employment practice is established when the complaining party demonstrates that ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m). In addition, the 1991 amendments provide that, "On a claim in which an individual proves a violation ... and a respondent demonstrates that the respondent would have taken the same action in the absence of the impermissible motivating factor, the court ... (i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e–2(m) ...; and (ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment." 42 U.S.C.A. § 2000e–5(g)(2)(B).

█ Thus, under these amendments, if the plaintiff shows merely that gender was a motivating factor, she has established liability and thus may be entitled to some relief. Whether the defendant has met its "same action" burden of proof would go to the nature of the relief available.[6]

**5.** Plaintiff's brief in opposition to motion for summary judgment, filed October 16, 2003 (Doc. no. 16), at 8–9.

**6.** This understanding of the 1991 amendments is confirmed by their legislative history. This history indicates that the purpose of the amendments was to overrule partially that part of *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which exempted employers from liability and precluded any Title VII remedy if they could produce evidence and persuade the court that an adverse-employment decision would still have been made in the absence of a discriminatory motive. The House Report states:

"When Congress enacted the Civil Rights Act of 1964, it precluded all invidious consideration of a person's race, color, religion, sex or national origin in employment. The effectiveness of Title VII's ban on dis-

██ In order for a plaintiff to be entitled to full relief, the court would have to find: first, that the plaintiff has established that gender was a motivating factor for a decision by the defendant, even though other factors also motivated the defendant; and, second, that the defendant has failed to establish that it would have taken the same adverse-employment action against the plaintiff even in the absence of the impermissible factor. However, if the only fact proved by the plaintiff is that gender was a motivating factor, the plaintiff has still established liability and may be entitled to limited relief, including declaratory relief, some injunctive relief, and attorney's fees and costs.

██ White claims that Verizon discriminated against her because of her gender. Therefore, this court will analyze her claim using the framework set out by the United States Supreme Court in *McDon-nell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima-facie case of unlawful sex discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. at 1824. A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). A plaintiff's prima-facie case raises a presumption of illegal discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th

crimination on the basis of race, color, religion, sex or national origin has been severely undercut by the recent Supreme Court decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In that case, the Supreme Court concluded that 'when a plaintiff ... proves that her gender played a motivating part in an employment decision, *the defendant may avoid a finding of liability* ... by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.' Id. at 258, 109 S.Ct. at 1795 (emphasis added)".

\* \* \* \* \* \*

"To establish liability under proposed Subsection 703(1), the complaining party must demonstrate that discrimination *actually contributed* or was otherwise *a factor in* an employment decision or *action*. Thus, in providing liability for discrimination that is a *'contributing factor,'* the Committee intends to restore the rule applied in many federal circuits prior to the *Price Waterhouse* decision that an employer may be held liable for any discrimination that is actually shown to play a role in a contested employment decision."

"Section 203 of the bill also amends Subsection 706(g) of Title VII to make clear that where a violation is established under Subsection 703(1), and where the employer establishes that it would have taken the same action in the absence of any discrimination, a court may not order the employer to hire, reinstate, promote or provide back pay to the complainant. This provision is consistent with the current text of Title VII, which provides that 'no order of the court shall require the admission or reinstatement of an individual ... if such individual ... was refused employment ... for any reason other than discrimination.' 42 U.S.C. § 2000e–5(g)."

\* \* \* \* \* \*

"However, the presence of a contributing discriminatory factor would still establish a Title VII violation, and a court could order other appropriate relief, including injunctive or declaratory relief, compensatory and punitive damages where appropriate, and attorney's fees."

H.R.Rep. No. 102–40(I), 102d Cong., 1st Sess. 45, 48–49, *reprinted in*, 1991 U.S.C.C.A.N. 549, 583, 586–87 (emphasis in original) (footnotes omitted).

Cir.2000) (en banc); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir. 1997).

■ If the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for its employment action. *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir.1997). "This intermediate burden is 'exceedingly light.'" *Id.* (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061 (11th Cir.1994)). The defendant has a burden of production, not persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253–55, 258, 101 S.Ct. at 1093–94, 1096.

■ Once the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman,* 229 F.3d at 1024 (citations omitted).

■■ However, the establishment of a prima-facie case does not, in itself, entitle a plaintiff to defeat a summary-judgment motion. *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987); *Pace v. Southern Ry. System,* 701 F.2d 1383, 1389 (11th Cir.1983). After a defendant proffers a nondiscriminatory and legitimate reason for its actions, "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable

fact finder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037.

To make out a prima-facie case of discrimination against Verizon, White must show the following: (1) she is a member of a protected class, (2) she was qualified for the position of splicer, (3) she was denied the promotion, and (4) some additional factor that would allow an inference of discrimination. *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (requiring that plaintiff show "circumstances which give rise to an inference of unlawful discrimination"). To be sure, courts have rejected a rigid application of the prima-facie case. *Howard v. Roadway Express, Inc.,* 726 F.2d 1529 (11th Cir.1984). Nevertheless, the prima-facie case must still include "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977).

There is no doubt that White has established a prima-facie case of discrimination. She is a member of a protected class; she was not offered the promotion; she was qualified for the promotion; and the promotion was filled by a candidate who was not a member of a White's protected class. Verizon admits this much: "Verizon concedes that she met the minimum qualifications that were required to apply for the position."[7]

Because White has established a prima-facie case, the burden shifts to Verizon to articulate a legitimate, nondiscriminatory reason. Verizon has met this burden of production. According to Verizon, White

---

**7.** Defendant's brief in support of motion for summary judgment, filed September 2, 2003

(Doc. no. 12), at 18, fn. 2.

was not promoted "because other candidates undisputedly had more experience that . . . was in line with the Splicer job duties."[8] The evidence demonstrates that both of the promoted individuals occupied positions that were ranked above White's, both in classification and in pay.

Although Verizon has eliminated the presumption of discrimination by articulating this legitimate, non-discriminatory reason, White still has an opportunity to present evidence that Verizon's stated reason is merely pretextual. This can be done by demonstrating that discriminatory intent actually motivated the employment decision.

White contends Verizon's profferred reason is pretextual; she states that she was more qualified than all the other candidates and that she had more seniority than one of the applicants who was hired. The thrust of White's pretext argument is that she disputes the fact that the other candidates were technicians made them more qualified and that Verizon should have weighed seniority more heavily.

▮▮▮ In a failure-to-promote case, a plaintiff cannot establish pretext by simply demonstrating she is more qualified than the other candidates. Rather, " 'disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face.' " *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir.2000) (quoting *Deines v. Texas Dep't of Protective and Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir.1999)).

The only evidence of White's contention that technicians are more qualified for promotion to splicer than locators is a statement from Gail Vinson, Regional Manager of the Buried Wire Service Group; Vinson states that, although technicians and locators do jobs that are "not similar," she does not see any distinct advantage of having one position over the other.[9] White does not dispute that technicians were paid more and classified higher than locators.

Construing the evidence in the light most favorable to the nonmoving party, White's contentions show only that King did not weigh the candidates' qualifications in the same way White would have if she were the hiring manager. White's evidence did not show that the employment factor considered by King is a not legitimate business consideration or that it was not actually used. And more to the point, White has not shown that her allegedly superior qualifications jump off the page and slap you in the face.

Moreover, while White had more seniority than those given the slicer position, the union agreement between the Verizon Buried Service Wire Group and Communications Workers of America, under which White was covered, requires promotions to be made according to the qualifications of the applicants. The contract states that "Where qualifications are equal, seniority will be the deciding factor in the final selection."[10] The evidence demonstrates that, because Verizon's decision was based on the qualifications of the candidates, it was not required to base its decision on seniority.

---

**8.** *Id.* at 18.

**9.** Plaintiff's brief in opposition to motion for summary judgment, filed October 16, 2003 (Doc. no. 16), exhibit 15 (deposition of Gail Vinson).

**10.** Plaintiff's brief in opposition to motion for summary judgment, filed October 16, 2003 (Doc. no. 16), exhibit 12 (agreement between Verizon and CWA).

Nor can White maintain that she was denied the opportunities given to those offered the slicer position. The only reason she did not have the same experience as the individuals promoted was because she had previously refused offers of promotion to technician.

White also claims that the Hiring Manager King's remarks during her "interview" demonstrate that Verizon was actually motivated by discriminatory animus. King stated that he did not believe White could do the job of a splicer because the job involved heavy lifting that he believed she was not physically capable of. He also told White's supervisor that he believed White was better suited for an office job.[11]

As stated, under Title VII, "an unlawful employment practice is established when the complaining party demonstrates that ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e–2(m). Because there is no evidence that Verizon (that is, King) looked to other candidates', in particular, males', physical abilities when considering job requirements or looked to whether men were better suited for office work (which could be viewed as stereotypically women's work), a reasonable jury could conclude that King allowed stereotypical assumptions about women's capabilities to affect his judgment regarding promotions, in violation of Title VII.

 However, as previously stated, Verizon also had a legitimate, nondiscriminatory reason for not promoting White— she simply was not as qualified as the applicants that were hired. Even though White has raised a genuine issue of fact regarding whether King harbored an impermissible motive in denying her the pro-

motion, Verizon has submitted conclusive evidence that, even if King had an illegal motive, it would have made the same decision in the absence of King's illegal assumptions regarding a woman's ability to do the job of a cable splicer.

The court will, therefore, grant Verizon's motion for summary judgment to the extent White contends that she was denied the splicer position because of her gender. The court will, however, deny the motion to the extent White contends that King entertained sexually discriminatory assumptions in making his decision. Of course, in accordance with Title VII's relief provisions discussed above, should White prevail on her motivation claim, her relief would be limited to declaratory relief, injunctive relief other than a promotion, and attorney's fees and costs demonstrated to be directly attributable to the pursuit of the motivation claim. 42 U.S.C.A. § 2000e–5(g)(2)(B). Because she would not have prevailed on anything other than that her gender was a motivating factor, she would not be entitled to an award of damages or an order requiring her promotion to cable splicer. *Id.*

For the foregoing reasons, it is ORDERED as follows:

(1) The motion for summary judgment, filed by defendant Verizon South, Inc. on September 2, 2003 (Doc. no. 11), is granted to the extent that plaintiff Rhonda White claims that she was denied the "cable splicer" position because of her gender.

(2) The motion is denied to the extent that plaintiff White claims that her gender was a motivating factor; and, should plaintiff White prevail at trial on her motivation claim, her available relief will be limited to a declaratory judgment, injunctive relief

---

11. Plaintiff's brief in opposition to motion for summary judgment, filed October 16, 2003 (Doc. no. 16), exhibit 2, (deposition of Philip Hunter), at 31.

other than promotion to cable splicer, and attorney's fees, and costs.