[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 3, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11979
Non-Argument Calendar

_____

D. C. Docket No. 06-00672-CV-WKW

ANTHONY BERNARD MOORER,

Plaintiff-Appellant,

versus

CITY OF MONTGOMERY,
BERNARD HARRIS,
THOMAS PROVITT,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(September 3, 2008)

Before ANDERSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Anthony Bernard Moorer, an African American proceeding pro se, appeals the district court's grant of the defendants' joint motion for summary judgment as to Moorer's 42 U.S.C. § 1983 complaint alleging (1) racial discrimination against Bernard Harris, (2) violation of due process against Thomas Provitt, and (3) failure to properly train against the City of Montgomery. For the reasons set forth below, we affirm.

## I. Facts

Initially, Moorer filed a complaint alleging, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), racial discrimination against the city. Moorer alleged that he worked on the city's painting crew and that his painting-crew supervisor had required him to do less-desirable work than white crew members. Specifically, his supervisor, Harris, made him do the "high work." When Moorer asked Harris why Moorer always had to do the high work, Harris explained that one crew member was too old and another crew member was too large to do the high work.

A magistrate judge issued an order to show cause why the complaint should not be dismissed for lack of jurisdiction, as Moorer had failed to raise his claim before the Equal Employment Opportunity Commission. In response, Moorer further alleged that the paint crew included two black and three white crew

2

members. Harris, the crew's foreman and the only other black person on the crew besides Moorer, treated Moorer differently than the white crew members. Specifically, Harris always required Moorer to do the high work, or painting while on an approximately 30-foot ladder. This work was extremely dangerous and undesirable. Also, on another occasion, Provitt, the assistant director of the city's maintenance department, told Moorer to get "[his] ass off the City Lot" and not to return. Thus, Provitt terminated Moorer without affording Moorer a hearing or a method of contesting the employment decision. Also in response, Moorer conceded that the district court lacked jurisdiction under Title VII and requested permission to bring his claim under § 1983 and permission to add as defendants Harris and Provitt in their individual capacities. The magistrate recommended granting Moorer's requests and dismissing Moorer's Title VII claims.

The district court adopted the magistrate's recommendation and ordered Moorer to file an amended complaint including the new defendants and citing § 1983. Moorer failed to do so. Accordingly, the magistrate issued an order requesting service upon the city, Harris, and Provitt and defining Moorer's claims as those listed above.

The defendants filed a joint motion for summary judgment, pursuant to Fed.R.Civ.P. 56(b). Along with the motion, the defendants submitted, inter alia,

the affidavits of Harris and Provitt. In his affidavit, Harris stated that, as the supervisor of the paint crew, he had to decide how best to use his manpower to accomplish a given job. For each job, Harris decided who on the crew was best qualified to complete each task based on the crew members' "unique skills and ability." Moorer was the newest and least experienced member of the crew. Thus, he was assigned the high work as a method by which he could "prove [to Harris] his capabilities for increased responsibility or more difficult tasks." Also, Harris had received and read the city's "Personnel Board Rules and Regulations," including the portions contained therein about discrimination and harassment, and had received training on discrimination and harassment.

In his affidavit, Provitt stated that he informed Moorer that he had been transferred from the paint crew to the "grass cutting crew." Moorer's new foreman drove Moorer to the job site. After arriving at the job site, Moorer asked the foreman to drive him back to the maintenance department's main office. The foreman did so and immediately contacted Provitt and informed him of Moorer's return. Provitt located Moorer to inquire why Moorer asked to return to the main office. Moorer was on the telephone requesting a ride home. When Provitt told Moorer to hang up the phone, Moorer told Provitt that he "quit." Provitt told Moorer that he needed to fill out certain paperwork. When Moorer refused, Provitt

told him to "leave the lot."

In response, Moorer submitted, <u>inter alia</u>, excerpts from a county court bench trial after which a judge held that Moorer resigned on the day in question and did not, therefore, merit unemployment compensation. The excerpts from the bench trial showed that Provitt testified that, after he located Moorer on the telephone requesting a ride home from the job site, Moorer told Provitt that he had better things to do and that he quit. Provitt asked Moorer to sign a letter of resignation, but Moorer refused. Provitt told Moorer to get his "ass" off the lot. However, Provitt did not terminate Moorer. Provitt did not have the power to terminate Moorer. Moorer did not receive a hearing, but only because he never returned to work after that day. Had he returned to work, Moorer would have received a hearing.

Moorer testified that he was reassigned from the paint crew to the grass-cutting crew on the day in question as punishment for a small violation. When his new foreman took Moorer to the job site, the foreman informed Moorer that the grass-cutting crew did not take breaks or lunch. This prompted Moorer to ask to return to the main office. When he arrived at the main office, he called a supervisor to inquire after the grass-cutting crew's no-break-and-lunch policy. He was not telephoning someone for a ride home. During his subsequent conversation

5

with Provitt, Moorer did not say that he quit and, in fact, told Provitt that he did not quit. Even so, Provitt told him to get his "ass" off the lot and to not return. Moorer immediately contacted the mayor's office. No one at the mayor's office, or the maintenance department, told Moorer that he had to return to work. No one ever contacted Moorer after that day, and had someone contacted him, he would have returned to work because he wanted his job. On cross-examination, however, Moorer admitted that the mayor's assistant advised him that, if Moorer did not return to work for three days, he would be abandoning his job. Moorer stated that he believed, however, that Provitt's instruction not to return to the lot trumped the mayor's assistant's advice.

The mayor's assistant testified that he told Moorer that, if Moorer did not go to work for three straight days, he might be found to have abandoned his job. The mayor's assistant admitted that he did not, however, apprise Moorer of this policy in writing or follow up with the maintenance department or Moorer.

A magistrate judge recommended granting the defendants' motion for summary judgment. In his report, the magistrate reasoned that Moorer had not demonstrated a prima facie case of discrimination. Moorer had not shown that climbing a ladder to paint was an adverse employment action, as the record suggested doing so was "the normal responsibility of one of the members of the

6

paint crew" and as the assignment did not involve a tangible harm or alteration of job title. Moorer also had not shown that the white crew members were similarly situated, as Moorer was the newest and least experienced crew member. In any event, Harris had given a legitimate, non-discriminatory reason for the decision, namely that Moorer was the newest and least experienced crew member, and Moorer had failed to show that the proffered reason was pretext.

The magistrate also reasoned that Moorer was not deprived of his due process rights, as the defendants demonstrated that Moorer resigned and Moorer had failed to show that his resignation was involuntary. The magistrate finally reasoned that Moorer had not demonstrated a prima facie case of failure to train, as Moorer had failed to identify any city policies or customs that would cause its employees to violate anyone's constitutional rights.

Moorer objected that Harris's proffered reasons for his decision were pretextual. Moorer argued that the crew member who was too old to do the high work only was 4 years older than Moorer, as he was 51 years old and Moorer was 47 years old. The other crew members were much younger, at 31 and 33 years old. Also, while the crew member who was too large to do the high work indeed weighed 300 pounds, ladders were manufactured that could hold men weighing up to 400 pounds. Moorer weighed 235 pounds, and the other crew members were

7

much lighter, at 160 pounds each. Furthermore, it would have made more sense to assign the most dangerous work to the most experienced painter.

The district court adopted the magistrate's recommendation. The district court reasoned that Moorer had not demonstrated a prima facie case of discrimination and that allocating the available manpower by assigning the high work to the newest member of the crew, or Moorer, was a legitimate, non-discriminatory reason. The district court also stated that Moorer's arguments regarding specific ages and weights were not properly before the district court because Moorer had failed to include these arguments in his response to the defendants' motion for summary judgment. The district court further stated, however, that, even if they had been properly raised, these arguments would not create a disputed issue of material fact.

## II. Law and Analysis

We review the district court's order granting summary judgment de novo. Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1357 (11th Cir.1999). Such a grant of summary judgment is appropriate only "where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. at 1358 (citing Fed.R.Civ.P. 56(c)). In determining whether summary judgment is appropriate, we review the record and draw all reasonable

8

inferences in the light most favorable to the non-moving party. Id.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005).

As an initial matter, although Moorer partially cites and very briefly discusses Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84, he has not raised on appeal, but, rather, has abandoned, any argument that the district court should have conducted a mixed-motive analysis.  We have held that "a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate" and must "devote[] a discrete section of his argument to [that] claim[]." United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003). Otherwise, the appellant abandons the argument. Id. at 1283.  Moorer did not object to or otherwise comment on the district court's failure to apply a mixed-motive analysis, list this topic as an issue in his initial brief, or apply Desert Palace to the facts of his case.   Furthermore, Moorer clearly cited and focused on applying the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Moreover, Moorer did not cite Desert Palace or refer to mixed-motive law before the magistrate or district court. Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004)

9

(noting that issues not raised before the district court will not be considered on appeal). Thus, we will not consider or address whether the district court should have applied a mixed-motive analysis. See Jernigan, 341 F.3d at 1283, 1284 n.8.

## A. Discrimination

Pursuant to § 1983, "[e]very person who, under color of [law,] [deprives] . . . any citizen . . . of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." In reviewing claims brought under this statute, we use the framework established in McDonnell Douglas. Richardson v. Leeds Police Dep't, 71 F.3d 801, 805-06 (11th Cir. 1995). Under this framework, the plaintiff has the burden of establishing a prima facie case of racial discrimination. McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. The plaintiff may meet his burden using direct or circumstantial evidence. See Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (outlining the types of evidence used to prove a Title VII claim); Richardson, 71 F.3d at 805 (holding that the same types of evidence used to prove a Title VII claim also may be used to prove a § 1983 claim).

Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption. Scott v. Suncoast Beverage Sales, Ltd., 295 F.3d 1223, 1227 (11th Cir. 2002). Only the

10

most blatant remarks, whose intent could be nothing other than to discriminate on the basis of the protected classification, constitute direct evidence of discrimination. Id. If the plaintiff produces evidence of this ilk, he has established a prima facie case, and the ultimate issue of discrimination is proven. Evans v. McClain of Georgia, Inc., 131 F.3d 957, 961-62 (11th Cir. 1997).

Where the plaintiff cannot produce direct evidence, however, he must use circumstantial evidence to demonstrate, by a preponderance of the evidence, that: (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (considering racial discrimination). Regarding the similarly-situated-employee element, we have held that "the plaintiff must show that he and the employees are similarly situated in all relevant respects." Id. If the plaintiff successfully establishes a prima facie case, there is a presumption of discrimination. McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824. The burden then shifts to the defendant to rebut this presumption by articulating a legitimate, non-discriminatory reason for the complained-of action. Id. at 802, 93 S.Ct. at 1824. If the defendant fails to meet this burden, then the district court must award judgment to the plaintiff as a matter of law. St.

11

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993). If the defendant meets this burden, then the burden shifts to the plaintiff to show that the articulated reason was a pretext for discrimination. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56, 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207 (1981). When pretext is an issue, the question the district court must answer is whether the employer's proffered reasons were "a coverup for a . . . discriminatory decision." Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). In doing so, the district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997). We have cautioned, however, that the district court is "not in the business of adjudging whether employment decisions are prudent or fair." Damon, 196 F.3d at 1361.

The district court did not err in granting the defendants' motion for summary judgment. See Damon, 196 F.3d at 1357. Although he argues otherwise, Moorer did not produce direct evidence of discrimination, as he did not contend or demonstrate that Harris made remarks illustrating a clear discriminatory intent. See Scott, 295 F.3d at 1227.

12

Also, Moorer failed to establish a prima facie case of discrimination by way of circumstantial evidence. See McDonnell Douglas Corp., 411 U.S. at 802, 93 S.Ct. at 1824. The parties do not dispute that Moorer was a member of a protected class or could do a job other than the high work. See Holifield, 115 F.3d at 1562. Moorer, however, did not demonstrate that similarly situated employees outside his protected class were treated more favorably. See Holifield, 115 F.3d at 1562. Although Moorer contends that the district court required near-perfect similarity, the record demonstrates that the district court based its reasoning on this point on the fact that Moorer was less experienced than the other crew members. Experience level seems relevant to the task of assigning jobs, as a new employee may have yet to "earn" a more-desirable task. See Holifield, 115 F.3d at 1562.[1] Thus, Moorer could not establish a prima facie case of discrimination because the white crew members were not similarly situated. See Holifield, 115 F.3d at 1562. Because he failed to satisfy his burden with respect to this element, we need not address whether being assigned the high job constituted an adverse employment

---

[1] Moorer argues that we should not consider Harris's statement that one of the crew members was too old and one was too large to do the high work as a distinguishing factor or a legitimate, nondiscriminatory reason for Harris's actions. Moorer argues that this statement was not properly before the district court because it only was included in Moorer's original complaint, which was dismissed. We find it unnecessary both to rely on this "evidence" and to address Moorer's argument, as Moorer's experience level alone was sufficient to distinguish him from the other crew members, as discussed above, and to justify Harris's actions, as discussed below.

13

action.

Even had Moorer been able to satisfy his initial burden, however, the defendants articulated a legitimate, nondiscriminatory reason for Harris's decision, and Moorer failed to demonstrate that this reason was pretext. See McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824; Texas Dep't of Cmty. Affairs, 450 U.S. at 255-56, 101 S.Ct. at 1094-95. Regarding the defendants' legitimate, non-discriminatory reason, Harris explained in his affidavit that Moorer was assigned the high job because he was the newest and least experienced member of the crew and the high job was a method by which he could "prove his capabilities for increased responsibility or more difficult tasks." As this explanation had nothing to do with his race, these proffered reasons were legitimate and nondiscriminatory. See McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824.

Regarding Moorer's showing of pretext, Moorer argued that Harris's true motivation must have been Moorer's race because Moorer himself was not a young man at the time of the assignment and as it made no sense to assign the most dangerous job to a novice. See Texas Dep't of Cmty. Affairs, 450 U.S. at 255-56, 101 S.Ct. at 1094. Ignoring the fact that Moorer first alleged these specific ages and weights in his objection to the magistrate's report, Moorer failed to establish

14

that reasons to do with his age, weight, and experience were just a "coverup." See Rojas, 285 F.3d at 1342. Moorer stated that he was not so much younger than the white crew member who was too old, but admits that he was, indeed, younger, such that this proffered reason was not implausible or inconsistent. See Combs, 106 F.3d at 1538. Also, Moorer stated that he did not weigh so much less than the white crew member who was too large, but admits that he was, indeed, lighter, such that this proffered reason was not implausible or inconsistent. See id. These reasons were not so weak as to completely lack credence. See Combs, 106 F.3d at 1538.

Furthermore, Moorer stated that it was illogical to assign the most dangerous task to a novice, but Harris did not claim that Moorer was given the high work because he did not know what he was doing, but rather because he had yet to prove himself worthy of a more-desirable task. While this motivation may seem unfair, it did not demonstrate a racially discriminatory motive, and the fairness of the decision was not a matter for the district court to consider. See Damon, 196 F.3d at 1361. Thus, the defendants articulated legitimate, nondiscriminatory reasons, and Moorer could not satisfy his burden of showing that the proffered reason was pretext. See McDonnell Douglas Corp., 411 U.S. at 802-803, 93 S.Ct. at 1824; Texas Dep't of Cmty. Affairs, 450 U.S. at 255-56, 101 S.Ct. at 1094. Accordingly,

15

the district court did not err in granting the defendants' motion for summary judgment, and we affirm as to this claim. See Damon, 196 F.3d at 1357.

## B. Due Process

The Due Process Clause "requires notice and the opportunity to be heard incident to the deprivation of life, liberty or property at the hands of the government." Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). To establish a violation of this clause in the context of a § 1983 claim, a plaintiff must prove: (1) a deprivation of a constitutionally protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process. Id.

Regarding the deprivation element, we have held that the state does not deprive a plaintiff of his property interest in a job if the plaintiff voluntarily resigns. Hargray v. City of Hallandale, 57 F.3d 1560, 1567-68 (11th Cir. 1995). We explained that, "[i]f [the plaintiff] resigned of his own free will even though prompted to do so by events set in motion by his employer, he relinquished his property interest voluntarily and thus cannot establish that the [city] 'deprived' him of it within the meaning of the due process clause," but that "[i]f, on the other hand, [the plaintiff's] resignation was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by [the city] action triggering the protections of the due process clause." Id. at 1567. For those cases

16

in which the issue is whether a plaintiff has voluntary resigned, we have provided the following guidelines.

The district court should presume that a resignation was voluntary. Id. at 1568. "This presumption will prevail unless [the plaintiff] comes forward with sufficient evidence to establish that the resignation was involuntarily extracted." Id. To determine this, the district court should examine the surrounding circumstances and assess whether the plaintiff had the ability "to exercise free choice" on the matter, or whether his employer "force[d] the resignation by coercion or duress." Id. The district court must assess whether real alternatives were offered using an objective standard, rather than by the employee's subjective perception that his only option was resignation. Id. Indeed, we recognized that "resignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges," since the plaintiff in such a situation still had a choice. Id.

The district court did not err in granting the defendants' motion for summary judgment. See Damon, 196 F.3d at 1357. The defendants do not dispute that Moorer had a constitutionally protected interest in his job or that state action was involved. See Grayden, 345 F.3d at 1232. Moorer failed, however, to establish that the state deprived him of this interest. See id. Rather, the record

17

demonstrates that Moorer voluntarily resigned his position. See Hargray, 57 F.3d at 1567-68. When Provitt instructed Moorer to get off the lot, the record suggests that Moorer had the choice to remain. See id. It appears that Provitt ordered Moorer off of the lot because Moorer would not perform his assignment, such that Moorer could have remained on the lot by agreeing to return to the job site and rejoin the grass-cutting crew. Also, when Moorer left the lot, the record shows that he had the choice to return. See id. Although Moorer claims that he could not have returned because he would have risked a trespassing charge in doing so, nothing in the record supports this claim, and we have recognized that a choice that involved a criminal charge is still a choice. See id. Finally, after the mayor's assistant advised Moorer that he should return to work within three days or risk being found to have voluntarily resigned his position, it appears that Moorer not only had a choice to return, but knew that he must exercise this choice. See id. Thus, because Moorer voluntarily resigned by leaving the lot and failing to return although he had other options and knew the risk of not exercising those other options, he was not forced to resign by coercion or duress and was not deprived by the state of his property interest in his job. See id. Accordingly, the district court did not err in granting the defendants' motion for summary judgment, and we affirm as to this claim. See Damon, 196 F.3d at 1357.

## C. Failure to Train

The Supreme Court has held that a city can be held liable under § 1983 for constitutional violations resulting from its failure to train municipal employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 380, 109 S.Ct. 1197, 1200, 103 L.Ed.2d 412 (1989). The Supreme Court, however, has held that this liability is limited to cases in which (1) the city inadequately trains or supervises its employees, (2) this failure to train or supervise is a city policy, and (3) that city policy causes the employees to violate a citizen's constitutional rights. Id. at 389-91, 109 S.Ct. at 1205-06.

The district court did not err in granting the defendants' motion for summary judgment. See Damon, 196 F.3d at 1357. Although he alleged as much, Moorer did not provide any evidence that the city had a policy of inadequately training its employees with respect to job assignments for minorities. See City of Canton, Ohio, 489 U.S. at 389-91, 109 S.Ct. at 1205-06; Ellis, 432 F.3d at 1326. Indeed, in his affidavit, Harris stated that he had received and read the city's "Personnel Board Rules and Regulations" covering discrimination and harassment, and had been trained on discrimination and harassment, such that it appears the city actually made efforts to train its employees on similar matters. Thus, Moorer has not made any of the requisite showing. See id. Accordingly, the district court did not err in granting the defendants' motion for summary judgment, and we affirm as

19

to this claim.  <u>See</u> <u>Damon</u>, 196 F.3d at 1357.

**AFFIRMED.**