[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12994
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-02793-JSM-EAJ

EDUARDO DOMINGUEZ,

Plaintiff-Appellant,

versus

LAKE COMO CLUB,
a.k.a. Lake Como Co-op, Inc.,

Defendant-Appellee,

VAN BRADLEY,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 5, 2013)

Before DUBINA, Chief Judge, TJOFLAT and PRYOR, Circuit Judges.

PER CURIAM:

Appellant Eduardo Dominguez, proceeding *pro se*, appeals from the district court's grant of summary judgment in favor of his former employer, Lake Como Co-op, Inc. (hereinafter "resort"), in his employment discrimination suit brought under Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a).[1]

In his sworn complaint, Dominguez stated that he worked full-time on the resort's maintenance staff from 2005 until he was terminated in 2008. He contends that the first incident of discrimination occurred in 2007, when he overheard the manager's wife saying, "I hate fuckin' Cubans," at which point he immediately complained to the manager. After that complaint, Dominguez claims he experienced various retaliatory acts, including changes in his lunch hours, prohibitions from taking breaks, and threats to terminate him because he smoked a cigarette. He also claims that he was assigned all of the "hard jobs" involving heavy lifting. Additionally, he was consistently subjected to racial slurs by the manager and other employees, including discriminatory statements like, "well we don't have any Mexicans working here[,] but we got the next best thing, a Cuban."

---

[1] While the general manager at the resort was formerly a named party in Dominguez's complaint, the district court dismissed any claims brought against him individually. Dominguez does not challenge the manager's dismissal on appeal.

The evidence showed that in September 2008, Dominguez mistreated a coworker, who had been engaged in cleaning the property, by throwing a cigarette butt on the ground and shouting, "here, pick this one up!"  Subsequently, in November 2008, a female resort member reported two instances of Dominguez's inappropriate behavior toward her.  First, she reported that inside the resort's restaurant, Dominguez announced that he found kittens, and in order to find them a home, he would make a sign that said "free pussy," and place it outside of her tent.  Second, she stated that when she tried to pay Dominguez $30 in order to store her camper on his property, he replied, "just give me $15 and a blow job," something another patron also heard.  Dominguez did not dispute the cigarette butt incident, or that he told the resort member to give him "$15 and a blow-job," but he denied speaking to her about any kittens or placing a sign outside of her tent.  The resort subsequently terminated Dominguez for his misconduct.

Liberally construing Dominguez's *pro se* brief, we discern his first argument as challenging the district court's underlying award of summary judgment as to his disparate treatment, hostile work environment, and retaliation claims.  Dominguez argues that he was continuously discriminated against and ultimately terminated from his employment based on his Cuban descent, or national origin, and that his corresponding claims are meritorious under the law. Dominguez next argues that the district court violated his due process rights when it denied his request for

3

appointment of counsel pursuant to 42 U.S.C. § 2000e-5(f)(1)(B) because his claims were constitutional in nature, and the complexity of the litigation process rendered it impossible for him to properly represent himself before the court and in discussions with opposing counsel.[2]

For ease of reference, we will address each point in turn.

## I.

We will review a district court's grant of summary judgment *de novo*, viewing all evidence in a light most favorable to the non-moving party. *Owen v. I.C. Sys, Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is only warranted when the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Normally, a party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990). However, a *pro se* plaintiff's complaint, if verified pursuant to 28 U.S.C. § 1746, is equivalent to an affidavit,

---

[2] While the resort also presents arguments regarding Dominguez's motions to compel discovery and his request to stay the summary judgment ruling, because Dominguez fails to mention them, we need not address the merits of these issues. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.") (internal citations omitted).

and therefore may be viewed as evidence. *See Murrell v. Bennett*, 615 F.2d 306, 310 n. 5 (5th Cir. 1980).[3]

Title VII prevents an employer from discriminating against an employee because of his national origin. 42 U.S.C. 2000e-2(a)(1). A plaintiff may establish a Title VII claim through (1) direct evidence of discrimination, or (2) circumstantial evidence that creates an inference of discrimination. *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1103 (11th Cir. 2001). We use the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973), to evaluate Title VII claims that are based on circumstantial evidence of discrimination. *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

Under that framework, a plaintiff first must establish a *prima facie* case of discrimination based on disparate treatment. *Id.* at 1562. A plaintiff establishes a *prima facie* case of disparate treatment discrimination under Title VII by showing: "(1) []he is a member of a group protected by Title VII; (2) []he was qualified for the position or benefit sought; (3) []he suffered an adverse effect on h[is] employment; and (4) []he suffered from a differential application of work or disciplinary rules." *Spivey v. Beverly Enters.*, 196 F.3d 1309, 1312 (11th Cir. 1999). If the plaintiff successfully establishes a *prima facie* case, the burden shifts

---

[3] We adopted as binding precedent all Fifth Circuit cases decided before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

5

to the defendant/employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Holifield*, 115 F.3d at 1564. If the defendant articulates a legitimate, non-discriminatory reason, the presumption of discrimination is eliminated and the plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were pretextual. *Id.* at 1565.

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotation marks omitted). To establish a hostile work environment claim, a plaintiff must show: (1) he belongs to a protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) the employer is responsible for such an environment. *Id.* In evaluating the objective severity of the harassment, we look at the totality of the circumstances and consider, *inter alia*: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance;

6

and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.*at 1276.  In *McCann v. Tillman*, 526 F.3d 1370 (11th Cir. 2008), we held that two offensive, racially derogatory comments directed at an employee, when extended over a period of two years, were too sporadic and isolated to establish that the employer's conduct was objectively severe or pervasive enough to affect the employee's conditions of employment.  *McCann*, 526 F.3d at 1378-79.

Title VII also makes it unlawful for an employer to retaliate against an employee because he has opposed "an unlawful employment practice . . . ." 42 U.S.C. § 2000e-3(a); *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1268 (11th Cir. 2010).  To make a *prima facie* showing of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there was some causal relation between the two events.  *Alvarez*, 610 F.3d at 1268.  "The *McDonnell Douglas* burden-shifting analysis [also] applies in cases of retaliation relying on circumstantial evidence." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Finally, in both Title VII discrimination and retaliation claims, we require an employee to demonstrate that he suffered a serious and material change in the terms, conditions, or privileges of his employment in order to demonstrate an adverse employment action.  *Crawford v. Carroll*, 529 F.3d 961, 970-71 (11th Cir. 2008).

7

**II.**

Even if we assume that Dominguez's *pro se* brief adequately challenges the entry of summary judgment as to his disparate treatment, hostile work environment, and retaliation claims, we conclude from the record that they are all without merit.  In terms of his disparate treatment claim, Dominguez did not show that the combination of discriminatory comments, namely the isolated comment by the manager's wife about Cubans and the resort employee's related, repetitive ones, coupled with his more difficult work assignments, resulted in a serious and material change in the terms or privileges of his employment.  *See Carroll*, 529 F.3d at 970-71.  Moreover, even if the resort's actions, including his firing, are deemed adverse employment actions, Dominguez still failed to identify any non-Cubans making similarly offensive and embarrassing comments who were treated more favorably.  *See Spivey*, 196 F.3d at 1312.

With regard to his hostile work environment claim, any perceived harassment Dominguez experienced as a result of these comments was not sufficiently severe or pervasive to create an abusive work environment, and was, at most, merely offensive.  *Miller*, 277 F.3d at 1275-76.

Finally, Dominguez failed to show how his reporting of the derogatory comment by the manager's wife in 2007 was causally connected to any of the perceived mild retaliatory actions he outlined, particularly since his termination

8

occurred more than a year after he reported the comment. S*ee Alvarez,* 610 F.3d at 1268. Moreover, even if Dominguez did make a *prima facie* case for retaliation, given his uncontested misconduct on the job, the resort had legitimate, nondiscriminatory reasons to terminate him, and he failed to present any evidence showing those proffered reasons were merely pretextual. *See Holifield*, 115 F.3d at 1565.

Based on the above analysis, we affirm the district court's award of summary judgment for the resort.

### III.

We review the district court's denial of a request for appointment of counsel for an abuse of discretion. *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999). "[T]he abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*) (internal quoation marks omitted).

"A Title VII plaintiff has no automatic right to appointed counsel. However, 42 U.S.C. § 2000e-5(f)(1) authorizes appointment of counsel in such circumstances as the court may deem just." *Hunter v. Dep't of Air Force Agency*, 846 F.2d 1314, 1317 (11th Cir. 1988) (internal quotation marks omitted). Accordingly, in deciding whether to appoint counsel, the district court "has broad discretion . . .

9

and should appoint counsel only in exceptional circumstances." *Bass*, 170 F.3d at 1320. The following factors may be considered when determining whether "exceptional circumstances" exist: (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to adequately investigate the case; and (4) whether the evidence will consist in large part of incidents the indigent witnessed himself. *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982)).

In Dominguez's case, we conclude from the record that there were no exceptional circumstances that warranted the appointment of counsel. Dominguez filed numerous pleadings before the district court, including a complaint, several motions, and an answer to the resort's motion for summary judgment on his own behalf. Moreover, Dominguez's complaint did not present novel or complex issues that required the assistance of counsel. The issues were straightforward, and Dominguez had personal knowledge of the facts underlying his allegations of discrimination because he personally experienced the alleged discrimination.

Therefore, because the district court did not abuse its discretion in denying Dominguez's request for appointment of counsel pursuant to 42 U.S.C. § 2000e-5(f)(1)(B), we also affirm that order.

10

**AFFIRMED.**[4]

---

[4] Dominguez's motion for default in favor of appellant and motion to strike appellee's brief are **DENIED.**