**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1592
_____

MAURICE PARKER; MICAH PARKER,
                                        Appellants

v.

MARK FARLEY, in his official and individual capacities Delaware State University;
AMIR MOHAMMADI, in his official and individual capacities Delaware State
University; DELAWARE STATE UNIVERSITY
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-10-cv-01004)
District Judge:  Honorable Gregory M. Sleet
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 18, 2015
Before:  GREENAWAY, JR., SCIRICA and RENDELL, Circuit Judges

(Opinion filed:  September 9, 2015)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Maurice and Micah Parker appeal pro se from the District Court's order granting summary judgment to the defendants in a case arising out of their termination from public employment. For the following reasons, we will affirm.

I.

The Parkers were employed by Delaware State University (DSU) as Maintenance Craftsmen Mechanics and were members of the American Federation of State, County, and Municipal Employees' Local 1267. Their amended complaint alleged that they were terminated in October 2007 without due process, in violation of the Fourteenth Amendment. Maurice further alleged that he was discriminated against on the basis of his race, that DSU unlawfully retaliated against him, and that it maliciously interfered with his business relationships after the termination. The Parkers alleged that DSU terminated them and charged them with theft for salvaging copper pipe from a university building scheduled for demolition, despite the fact that a supervisor had given them permission to remove and sell the piping. The state ultimately declined to criminally prosecute the Parkers. Maurice and Micah each filed a grievance, pursuant to Local 1267's collective bargaining agreement with DSU, resulting in arbitrations upholding the termination of their employment. Maurice filed a claim with the EEOC, which determined that DSU had discriminated against him, in violation of Title VII of the Civil Rights Act of 1964. After a failed conciliation effort, the EEOC issued a right to sue letter in September 2010.

2

The Parkers began this action in November 2010. They were initially represented by counsel but have proceeded pro se since March 2013. The defendants moved for summary judgment in November 2013. The Magistrate Judge issued a report that recommended granting summary judgment on the due process and retaliation claims and denying summary judgment on the discrimination and tortious interference claims. Both parties objected, and the District Court overruled the Parkers' objections, sustained the defendants' objections, and granted summary judgment. The Parkers appealed. Maurice Parker alone signed the opening brief, which contained arguments that related to the circumstances of only his claims and, of that subset, addressed only the Title VII discrimination and due process claims.[1] Micah Parker has not submitted any documents on appeal.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo and view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Montone v. City of Jersey City, 709 F.3d 181, 189 (3d Cir. 2013). Summary judgment is proper only if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We have carefully

---

[1] Maurice Parker also argues that Judge Sleet should have recused himself from proceedings in the District Court because he served on a District Court advisory committee with the defendants' counsel. However, mere participation on a committee that serves to promote the administration of justice is not grounds for recusal. Plechner v.

3

reviewed the record and the parties' arguments on appeal, and we discern no error in the District Court's analysis.

## III.

We begin with whether Micah Parker abandoned his appeal by not signing the opening brief, or, indeed, submitting any documents on appeal. Although Micah did sign the notice of appeal, all appellate submissions have been by Maurice. Moreover, the submissions submitted by Maurice do not address the facts or circumstances of Micah's case.[2] Accordingly, we must conclude that Micah Parker has abandoned his appeal, and we will treat Maurice Parker as the sole appellant. See also 3d Cir. LAR Misc. 107.2(b).

Maurice Parker did not address his claims of retaliation or malicious interference with business in his opening brief. "While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned[.]" Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (internal citation omitted); see also United States v. Pelullo, 399 F.3d 197, 222 (3d Cir. 2005). Accordingly, we will consider only the claims briefed by Maurice.

Parker alleges that he was terminated in violation of his due process rights because his pre-termination hearing was held seven days after DSU's decision to terminate him. A party who seeks to establish a procedural due process claim must demonstrate that "(1)

---

Widener Coll., Inc., 569 F.2d 1250, 1262 (3d Cir. 1977); see also 28 U.S.C. § 455.
[2] As a pro se litigant, Maurice Parker may not represent parties other than himself. See Osei–Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 882–83 (3d Cir. 1991); 28 U.S.C. § 1654.

4

he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). It is undisputed that Parker had a property interest in his continued employment. See Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1398 (3d Cir. 1991). Therefore, before he could be deprived of that interest, he was entitled to "notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

We outline briefly the events that led to Parker's termination. Over a period of several days in early October 2007, the Parkers removed and sold copper piping from a DSU building slated to be demolished. On October 8, 2007, after Micah Parker was apprehended removing a piece of copper from the building, police officers discovered receipts, showing Maurice Parker's name, that documented the sale of copper piping at a salvage yard. That same day, the Parkers' supervisor met with both brothers and placed them on paid administrative leave pending an investigation. On October 10, 2007, Maurice Parker, represented by a union officer, again met with his supervisor. At the close of that meeting, Parker received two letters, one confirming that he had been placed on paid administrative leave pending DSU's investigation for theft, and one indicating DSU's intent to terminate him for theft and misuse of resources. The next day, Parker

5

returned the money he made from selling the piping and requested a pre-termination

hearing. On October 16 and 17, 2007, DSU called Parker to inform him that his pre-termination hearing would be held on October, 17, 2007 at 4:00 pm.[3] Parker claimed not

to have received those messages until the late afternoon of October 17, 2007, after the

time for the hearing had passed, at which time he called DSU to attempt to reschedule the

hearing. That same day, DSU issued two additional letters, one terminating Parker's

employment, and the other granting him the opportunity to reschedule. The hearing was

eventually held on October 24, 2007.

As a public employee, Parker was entitled to "a pretermination opportunity to

respond, coupled with [adequate] post-termination administrative [or judicial]

procedures." Loudermill, 470 U.S. at 547-48. At minimum, pre-termination procedures

must give the employee "oral or written notice of the charges against him." Id. at 546.

Pursuant to the collective bargaining agreement with Local 1267, "[w]ritten notice of

intent to suspend, demote, or discharge an employee must be given to the employee not

less than three (3) days prior to the proposed action." Parker acknowledged receiving

DSU's letters on October 10, 2007. Parker claimed, and the record supports, that he was

---

[3] Transcripts of the voice messages left by DSU indicate that only one message was left for Maurice Parker on October 16, and that message did not indicate that it was time-sensitive in any way. Another message, presumably meant for Maurice, was left on October 16, 2007, for "Micah Parker." Two messages left on October 17, 2007, contained errors, stating that the hearing was to be held "today, Wednesday the 16th," despite the fact that, in 2007, Wednesday of that week fell on the 17th. In any event, Parker claimed not to have received any of the messages until after 4:00 pm on October 17, 2007.

6

terminated on October 17, 2007. Therefore, he had seven days notice of the charges against him and their potential consequences, which constitutes adequate notice both under the greater protections of his collective bargaining agreement and as required by law. See Morton v. Beyer, 822 F.2d 364, 369 (3d Cir. 1987) (noting that "there need be no delay between the time 'notice' is given and the time of the hearing.") (quoting Goss v. Lopez, 419 U.S. 565, 582 (1975)).

Parker was also entitled to "a pre-termination opportunity to respond" to DSU's allegations. Loudermill, 470 U.S. at 547-48. Pre-termination procedures may be informal and yet still satisfy due process, as long as they give "the employee an opportunity to make any plausible arguments that might ... prevent [the] discharge." Fraternal Order of Police Lodge No. 5 v. Tucker, 868 F.2d 74, 79 (3d Cir. 1989) (internal quotations and citations omitted). At a minimum, pre-termination procedures must give the employee "an explanation of the employer's evidence, and an opportunity to present his side of the story." Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 220 (3d Cir. 2009) (quoting Loudermill, 470 U.S. at 546).

Parker argued on appeal that, because his formal pre-termination hearing took place on October 24, 2007, seven days after he was terminated, DSU failed to provide a pre-termination opportunity to respond. However, Parker acknowledged that he met with the defendants on two occasions before he received his notice of termination on October 17, 2014, and that he was informed of the charges against him and asked for his version of events. Indeed, during the second meeting, on October 10, 2007, Parker was

7

represented by a union officer. Parker thus was given an adequate pre-termination opportunity to respond to DSU's charges against him. See Tucker, 868 F.2d at 79. And certainly when combined with the formal post-termination hearing quickly afforded to Parker, this pre-termination opportunity to respond satisfied the dictates of due process.[4] See Biliski, 574 F.3d at 224. Accordingly, the District Court was correct to grant summary judgment on Parker's due process claim. See id. at 220.

We turn now to Parker's Title VII discrimination claim. Parker has offered no direct evidence of discrimination. In an indirect evidence case, we continue to analyze claims like Parker's under the familiar three-step, burden-shifting framework set up by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To satisfy the first step and establish a prima facie case of racial discrimination, a plaintiff is required to show that he belongs to a protected class, is qualified for his position, suffered an adverse employment action, and that the action occurred under circumstances that suggest unlawful discrimination. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 –11 (3d Cir. 1999).

It is undisputed that Parker satisfies the first three elements of his prima facie case. We therefore focus on the fourth element to determine whether his termination occurred under circumstances that give rise to an inference of unlawful discrimination.

Parker relied on comparator evidence to establish an inference of discrimination, arguing that two white employees who engaged in similar conduct were not terminated.

---

[4] Parker does not dispute the adequacy of the post-termination process.

To establish that a comparator is truly similarly situated, the claimant must show that he and the comparator are similarly situated in all relevant respects. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (collecting cases). Generally, there are many factors that can be relevant to this fact-intensive inquiry. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388 (2008). "This determination requires a court to undertake a fact-intensive inquiry on a case-by-case basis rather than in a mechanistic and inflexible manner." Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004). In the context of disciplinary cases or personnel actions, employees can be established as similarly situated by "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000) (citation omitted); see also Johnson v. Kroger Co., 319 F.3d 858, 867 (6th Cir. 2003) ("In the context of personnel actions, the relevant factors for determining whether employees are similarly situated often include the employees' supervisors, the standards that the employees had to meet, and the employees' conduct." (citation omitted)).

Here, neither the comparators' conduct nor their supervisors are sufficiently similar. Parker alleged that one employee, who is white, was suspended for one day for stealing clocks from the university. DSU alleged, and disciplinary records supported, that the employee merely brought the clocks to his home to make plexiglass covers for

9

them, a job the employee contended could be better done with his own equipment. Parker claimed that the other comparator, also a white employee, had used DSU vehicles to remove topsoil, and had delivered it to a third party for whom he was doing private construction work. That employee was suspended for one day. For its part, DSU claimed that the employee had simply used its vehicles to deliver soil to a third party. The disciplinary report did not state whether the soil was located on DSU property, and it charged the employee only with the unauthorized use of DSU vehicles. Even if the record supported that the soil was located on DSU property, which it does not, Parker did not establish that the soil's removal would constitute a "theft" of the same nature as the cutting, transportation, and sale of highly valuable copper piping. Therefore, Parker's conduct is not sufficiently similar to his proposed comparators'.

In addition, the comparators were disciplined by supervisors other than Parker's. By itself, this one difference would make it very difficult for Parker to establish any inference of discrimination under the McDonnell Douglas test. See Radue, 219 F.3d at 618. But, as we have noted, there are other significant differences as well. Accordingly, the District Court was correct to find that he failed to make out a prima facie case of discrimination. See Holifield, 115 F.3d at 1562.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

10